■ In the Matter of SHEILA DAVID, Appellant, v NEW YORK CITY CONCILIATION AND APPEALS BOARD, Respondent. — Judgment of the Supreme Court, New York County (Blangiardo, J.), entered April 20, 1982, which denied petitioner's application to annul the opinion and order of respondent dated July 9, 1981, is reversed, on the law and facts and in the exercise of discretion, without costs, and the petition granted. Petitioner tenant took occupancy of the subject apartment in Forest Hills, Queens, on July 15, 1978, pursuant to a two-year lease expiring July 30, 1980, at a monthly rental of $463. This rental included $50 monthly, plus 6% tax, for the rental of garage space No. 23 in the subject building. The option of renting space in the garage had been offered by landlord to tenant and she had accepted. Upon renewal of the lease, the tenant sought a three-year renewal lease without the garage space since she no longer needed it. The landlord, Thornton Arms, refused to renew the lease without inclusion of the rental of this garage space. The tenant signed a three-year renewal lease, including the garage space, pending the determination by respondent, Conciliation and Appeals Board, of the complaint she had filed on July 7, 1980. The board decided that on the basis of the tenant's decision to opt for the garage space in the initial vacancy lease, the garage rental "became a condition of the vacancy lease which may not be unilaterally altered by the tenant." The board stated: "There is nothing in the lease that states that the garage rental is to be optional upon subsequent renewals of the vacancy lease." The board, in its determination dated July 9, 1981, observed, inter alia, that "[r]equired services under the Rent Stabilization Law and Code include services provided on the base date and all additional services provided thereafter. As defined in Section 2 (m) of the Code, services include ancillary * * * garage space." Subdivision (m) of section 2 of the Code of Rent Stabilization Association of New York City, Inc. (Code), was designed to protect the interests

of the tenant, not to give a windfall to the landlord. When the board rejected tenant's argument that the garage space was to be regarded as a renewable option, it violated its *raison d'etre*. Its ruling must be deemed arbitrary and capricious. The tenant herein was given an option to rent a garage space with her initial lease. Upon the renewal, this same option was deemed no longer to exist. Interpreting subdivision A of sections 23 and 60 of the Code to comply with the legislative intent of protecting and benefiting tenants (New York City Administrative Code, § YY51-1.0), the option of utilizing or rejecting the available garage space is itself the condition which landlord must offer in each renewal lease. This board has reached the anomalous result of forcing the tenant to pay for garage space she does not need as a condition to renewing the lease for her residence. This is especially ironic since garage space in areas such as Forest Hills is at a premium and presumably the landlord would have no difficulty in renting this space to another. Clearly, it is in the interest of the landlord to increase the base stabilized rent by an additional amount equal to the rent for the garage space. The landlord can use this augmented rental as a springboard for higher increases, especially if the petitioner tenant is pressured into giving up her leasehold. Obviously, this is contrary to the spirit and the letter of the law which brought the Conciliation and Appeals Board into existence. It is inconceivable that the elaborate administrative machinery of the Conciliation and Appeals Board, which was invented to protect tenants, should be converted into an instrument for their exploitation by a landlord. *Matter of Century Operating Corp. v Popolizio* (90 AD2d 731), relied upon by the dissent, is not inconsistent with the result herein. Respondent's decision was arbitrary, capricious, irrational and contrary to the express legislative intent of the Code. Concur — Sandler, Carro and Asch, JJ.; Kupferman, J. P., concurs in a memorandum and Markewich, J., dissents in a memorandum as follows:

Kupferman, J. P. (concurring.) The petitioner occupied an apartment in Forest Hills, Queens, with a lease expiring July 30, 1980, at a monthly rental of $463. The rental included $50 a month for garage space in the building. In accordance with the Rent Stabilization Law (see *Matter of Century Operating Corp. v Popolizio,* 90 AD2d 731), the landlord offered a renewal, including the leasing of the garage space. The tenant no longer desired the garage space and sought to renew the lease without it, contending that originally it was an option which she took, and therefore the option should continue. The lease, however, contained no option, and the landlord insisted on the same terms and conditions applying. The Conciliation and Appeals Board (CAB) determined that the renewal of the garage space became a condition of the lease and could not be altered. The court at Special Term dismissed the petition and denied the application of the petitioner tenant in this CPLR article 78 proceeding to reverse the determination of the CAB. Seemingly, the issue is one of whether the determination of the CAB was arbitrary and capricious. However, while on its face there would not seem to be any problem in the ruling, I believe there is more involved. Among the purposes of the CAB, as can be seen from its name *"Conciliation* and Appeals Board" (italics added), is that of trying to reconcile differences. (See Note, Recent Statute, New York Rent Stabilization Law of 1969, 70 Col L Rev 156.) It would seem that if the landlord can rent the garage space elsewhere, there would be no need to foist it on the tenant who does not want it. In this case, the CAB has merely applied its rules without any attempt at conciliation or analysis of how to handle the situation. Accordingly, as applied, their action is arbitrary and capricious, and I would modify to remand to the CAB for further consideration.

Markewich, J. (dissenting.) At the outset, it should be said that the majority memorandum states the facts fairly. There is, however, the possibility that it

may be inferred therefrom that the *original lease* actually contained a provision granting an option respecting the garage; it did not. We are given brief pause by the separate concurrence which argues that the Conciliation and Appeals Board (CAB) did not fulfill a supposed duty of "trying to reconcile differences" between the parties. The title of the board is a misnomer. One may search the Rent Stabilization Law, the Code of the Rent Stabilization Association of New York City, Inc. (Code), and the guidelines and not find such a function. It would be expected that, had CAB been given such an assignment, it would have been spelled out somewhere in the statute or the regulations. [1]

Court-made law is made in this State on the basis of *stare decisis,* that is, a policy of not disturbing a settled point of law. In New York, the right to vary such a policy is usually reserved to our highest court. Hand in hand with this principle is the concept that, to make sense, law must have stability and there must be no question as to what version of law prevails at a given time. A collegial court in which cases are decided by panels, and which is not accorded the privilege of sitting *en banc,* might well have the problem of choosing which decision to accept should two panels differ, were it not for the self-imposed concept of constraint, established in this court from the time that we acquired more judicial personnel than the number to sit on one panel. When one panel has decided a question of law, any later panel faced by the same question is constrained to follow and respect that decision until — and if — the Court of Appeals should set it aside.[2] Without such a policy, there could be resulting chaos; the possibility exists that there could be two or even more different views of the law by separate panels of the court. The majority memorandum appears to violate this policy by departure from the rule of law laid down in *Matter of Century Operating Corp. v Popolizio* (90 AD2d 731). In that case, CAB had directed a landlord to put into a renewal lease, offered to a tenant, a paragraph exempting the tenant from payment of the first two months' rent in a renewal year. This provision had been negotiated between the parties in arriving at the first lease for a theretofore vacant apartment, and *it had become embodied as a clause in that lease.* CAB directed its inclusion in the lease by reason of the same statute and regulation involved here. At Special Term, Asch, J., confirmed that determination, and he was sustained in that ruling by this court.[3] On appeal here, the argument was made that it was the parties' intention "that the two-month rent concession be a 'one-time only' concession to induce the tenant to rent the apartment and that the concession expired with the initial lease. The board found that pursuant to section 60 of the Code of the Rent Stabilization Association of New York City, Inc. (Code), the owner was required to include in each renewal lease a concession of rent for the first two months of the lease term." (*Matter of Century Operating Corp. v Popolizio, supra,* p 732.) The court continued (p 732): "Under the Rent Stabilization Law the lawful stabilized rent is equal to the rent charged on the lease date * * * plus any increases authorized by the Rent Guidelines Board for vacancy or renewal leases. (Administrative Code of City of New York, § YY51-6.0, subd c; Code, § 60.) The Rent Stabilization Law requires that the Code

1. See, e.g., the statutes respecting the State Mediation Board. Section 752 of the Labor Law establishes it; section 753 states its objective and section 754 its powers and duties.

2. Obviously, there is no way to prevent such conflicts between different and differing judicial departments. They are usually resolved in time by the Court of Appeals.

3. In *Century Operating* the tenant's insistence on the concession was not pressed for the first several renewals and the landlord had omitted the applicable clause; waiver of the regulation was claimed but not sustained here. That factor does not seem at all pertinent to the application here of that case to the one before us.

promulgated thereunder contain provisions to prevent any evasion of the lawful stabilized rent and other provisions of the law either directly or indirectly, such as by reducing services or altering the lease agreement to the detriment of the tenant. (Administrative Code, § YY51-6.0, subd c, par [5].) Section 60 of the Code implements this requirement in mandating that, except for authorized rent increases, renewal leases be offered on the same terms and conditions as the expiring lease. (See *Matter of East 56th Plaza v New York City Conciliation & Appeals Bd.*, 56 NY2d 544.) The board's interpretation of the Code has a rational basis and although we might have reached a different conclusion, this court may not substitute its judgment for that of the board. (*Matter of Park East Land Corp. v Finkelstein*, 299 NY 70, 75.) Moreover, courts have repeatedly upheld orders of the board which required owners, pursuant to section 60 of the Code, to include in renewal leases conditions contained in the expiring lease. In *Matter of La Barbera v Housing Dev. Auth. of City of N. Y.* (44 AD2d 835), the Second Department upheld a C.A.B. order requiring the owner to include in the renewal lease a provision for a one month's rent concession for each year of the lease term, where the initial lease provided for such a concession. (See, also, *Matter of Kliegman v McGoldrick*, 285 App Div 1064.)" Therefore, not alone did this court in *Century Operating* sustain both CAB and Special Term in their interpretation of both the Rent Stabilization Law and the Code formulated pursuant thereto, but, at the very least it interpreted it rationally as not favoring either a landlord or a tenant but in favor of stability and reliability of the whole concept of removing the rental market in this city from the "dog eat dog" situation which existed before adoption of — giving each word its full meaning — a rent stabilization code, which applies equally to both landlord and tenant. We are constrained by *Century Operating* so to view the case before us, and we should confirm.