[872 NE2d 860, 840 NYS2d 748]

Sonia Rosario et al., Respondents, et al., Plaintiffs, v Diagonal Realty, LLC, et al., Appellants, et al., Defendants.

Argued May 31, 2007; decided July 2, 2007

**POINTS OF COUNSEL**

*Horing Welikson & Rosen, P.C.,* Williston Park (*Richard T. Walsh* and *Niles C. Welikson* of counsel), for appellant. I. Appellant had the right under federal and state law to opt out of the Section 8 program. (*Salute v Stratford Greens Garden Apts.,* 136 F3d 293; *People To End Homelessness, Inc. v Develco Singles Apts. Assoc.,* 339 F3d 1; *Mackey v 1525 Dorchester Co.,* 196 Misc 2d 662; *17th Holding v Rivera,* 195 Misc 2d 531; *Cipollone v Liggett Group, Inc.,* 505 US 504; *American Ins. Assn. v Garamendi,* 539 US 396; *Sanango v 200 E. 16th St. Hous. Corp.,* 15

AD3d 36; *Hoffman Plastic Compounds, Inc. v NLRB,* 535 US 137; *Tann Realty Co. v Thompson,* 112 Misc 2d 392; *Kulick & Rheingold Realty, LLC v Montero,* 8 Misc 3d 1007[A], 2005 NY Slip Op 50974[U].) II. Section 8 benefits are not part of the rent-stabilized tenancy. (*Kulick & Rheingold Realty, LLC v Montero,* 8 Misc 3d 1007[A], 2005 NY Slip Op 50974[U]; *Mackey v 1525 Dorchester Co.,* 196 Misc 2d 662; *17th Holding v Rivera,* 195 Misc 2d 531; *Matter of Century Operating Corp. v Popolizio,* 60 NY2d 483; *Matter of Missionary Sisters of Sacred Heart, Ill. v New York State Div. of Hous. & Community Renewal,* 283 AD2d 284.) III. Plaintiff has no standing to assert claims against Diagonal Realty, LLC under the expired Housing Assistance Payments contract. (*Board of Mgrs. of Alexandria Condominium v Broadway/72nd Assoc.,* 285 AD2d 422; *Rosier v Brown,* 158 Misc 2d 748.) IV. A landlord's decision to opt out of the Section 8 program does not constitute discrimination under the J-51 statute. (*Kulick & Rheingold Realty, LLC v Montero,* 8 Misc 3d 1007[A], 2005 NY Slip Op 50974[U]; *Salute v Stratford Greens Garden Apts.,* 136 F3d 293) V. Civil Court has jurisdiction to determine Sonia Rosario's claims. (*Post v 120 E. End Ave. Corp.,* 62 NY2d 19; *Kanner v West 15th St. Owners,* 236 AD2d 341; *Kanter v East 62nd St. Assoc.,* 111 AD2d 26; *Subkoff v Broadway-13th Assoc.,* 139 Misc 2d 176.) VI. Plaintiff was not entitled to a preliminary injunction. (*Uniformed Firefighters Assn. of Greater N.Y. v City of New York,* 79 NY2d 236; *Wm. Rosen Monuments v Madonick Monuments,* 62 AD2d 1053; *Paine & Chriscott v Blair House Assoc.,* 70 AD2d 571; *St. Paul Fire & Mar. Ins. Co. v York Claims Serv.,* 308 AD2d 347; *Rosa Hair Stylists v Jaber Food Corp.,* 218 AD2d 793.)

*Legal Aid Society,* New York City (*Judith Goldiner, Steven Banks, Adriene Holder* and *Scott Rosenberg* of counsel), for respondent. I. The Rent Stabilization Code requires continued acceptance of Section 8 subsidy payments as a "term and condition" of a rent-stabilized lease. (*Roxborough Apts. Corp. v Becker,* 296 AD2d 358; *East 11th St. Assoc. v Breslow,* 174 Misc 2d 994, 256 AD2d 110; *Mehlman Mgt. Corp. v Meyers,* 51 AD2d 949; *Tann Realty Co. v Thompson,* 112 Misc 2d 392; *Matter of Fishel v New York City Conciliation & Appeals Bd.,* 123 Misc 2d 841; 7 *Highland Mgt. Corp. v McCray,* 9 Misc 3d 129[A], 2005 NY Slip Op 51530[U]; *Licht v Moses,* 11 Misc 3d 76; *Kulick & Rheingold Realty, LLC v Montero,* 8 Misc 3d 1007[A], 2005 NY Slip Op 50974[U]; *People To End Homelessness, Inc. v Develco Singles Apts. Assoc.,* 339 F3d 1; *Mackey v 1525 Dorchester Co.,* 196 Misc 2d 662.) II. The United States housing act does not preempt

New York State's Rent Stabilization Code. (*California Fed. Sav. & Loan Assn. v Guerra,* 479 US 272; *Balbuena v IDR Realty LLC,* 6 NY3d 338; *Rowe v Pierce,* 622 F Supp 1030; *Independence Park Apts. v United States,* 449 F3d 1235; *Topa Equities, Ltd. v City of Los Angeles,* 342 F3d 1065; *Matter of Mott v New York State Div. of Hous. & Community Renewal,* 211 AD2d 147; *Sanango v 200 E. 16th St. Hous. Corp.,* 15 AD3d 36; *Chevron U.S.A. Inc. v Natural Resources Defense Council, Inc.,* 467 US 837; *Crosby v National Foreign Trade Council,* 530 US 363; *Salute v Stratford Greens Garden Apts.,* 136 F3d 293.) III. Section 11-243 of the Administrative Code of the City of New York requires recipients of J-51 tax abatements to accept Section 8 subsidies. (*Cosmopolitan Assoc., L.L.C. v Fuentes,* 11 Misc 3d 37.) IV. The Supreme Court was the appropriate forum for full resolution of this matter. (*7 Highland Mgt. Corp. v McCray,* 9 Misc 3d 129[A], 2005 NY Slip Op 51530[U]; *North Waterside Redevelopment Co. v Febbraro,* 256 AD2d 261; *Manhattan Parking Sys.-Serv. Corp. v Murray House Owners Corp.,* 211 AD2d 534; *Post v 120 E. End Ave. Corp.,* 62 NY2d 19.) V. Having consented, defendant may not now challenge conversion of plaintiff's motion to one for summary judgment.

*Andrew M. Cuomo, Attorney General,* New York City (*Michelle Aronowitz, Barbara D. Underwood, Ann Zybert* and *Gary Connor* of counsel), for New York State Division of Housing and Community Renewal, amicus curiae. I. A landlord's acceptance of Section 8 rent subsidy payments as part of a rent-stabilized tenant's lease is a term of the lease that must be continued in a renewal lease pursuant to New York's Rent Stabilization Code. (*Manocherian v Lenox Hill Hosp.,* 84 NY2d 385; *Matter of David v New York City Conciliation & Appeals Bd.,* 59 NY2d 714; *Roxborough Apts. Corp. v Becker,* 296 AD2d 358; *Matter of Fishel v New York City Conciliation & Appeals Bd.,* 123 Misc 2d 841; *Tann Realty Co. v Thompson,* 112 Misc 2d 392; *7 Highland Mgt. Corp. v McCray,* 9 Misc 3d 129[A], 2005 NY Slip Op 51530[U]; *Matter of Century Operating Corp. v Popolizio,* 60 NY2d 483; *Spaeda v Bakirtjy,* 186 Misc 2d 557; *Jandson Realty Corp. v Rogers,* 192 Misc 2d 505.) II. Section 8's eviction protection provision, 42 USC § 1437f (d) (1) (B) (ii), does not preempt Rent Stabilization Code (9 NYCRR) § 2522.5 (g) (1). (*English v General Elec. Co.,* 496 US 72; *New York Telephone Co. v New York State Dept. of Labor,* 440 US 519; *Balbuena v IDR Realty LLC,* 6 NY3d 338; *New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins. Co.,* 514 US 645; *Jones v Rath Packing Co.,* 430 US 519; *Rice v Santa Fe Elevator Corp.,*

331 US 218; *Loretto v Teleprompter Manhattan CATV Corp.,* 458 US 419; *Independence Park Apts. v United States,* 449 F3d 1235; *Kargman v Sullivan,* 552 F2d 2; *Ray v Atlantic Richfield Co.,* 435 US 151.)

*Borah, Goldstein, Altschuler, Nahins & Goidel, P.C.,* New York City (*Jeffrey R. Metz* of counsel), for Rent Stabilization Association of New York City, Inc., amicus curiae. Pursuant to the Supremacy Clause of the United States Constitution, the federal law allowing an owner to decline to participate in the Section 8 program, or to "opt out" of the program, must control. (*Balbuena v IDR Realty LLC,* 6 NY3d 338; *Jones v Rath Packing Co.,* 430 US 519; *Shaw v Delta Air Lines, Inc.,* 463 US 85; *Cipollone v Liggett Group, Inc.,* 505 US 504; *Manno v American Gen. Fin. Co.,* 439 F Supp 2d 418; *Rice v Santa Fe Elevator Corp.,* 331 US 218; *Malone v White Motor Corp.,* 435 US 497; *Ingersoll-Rand Co. v McClendon,* 498 US 133; *Salute v Stratford Greens Garden Apts.,* 136 F3d 293; *Knapp v Eagle Prop. Mgt. Corp.,* 54 F3d 1272.)

*South Brooklyn Legal Services, Inc.,* Brooklyn (*John C. Gray* and *Edward Josephson* of counsel), for Pratt Center for Community Development, amicus curiae. I. The holding of the Appellate Division advances the purposes of both the Rent Stabilization Code and federal Housing Law. (*Manocherian v Lenox Hill Hosp.,* 84 NY2d 385.) II. Reversal of the holding below would set a precedent limiting New York's ability to respond to the current housing crisis. (*Balbuena v IDR Realty LLC,* 6 NY3d 338; *Matter of Holtzman v Oliensis,* 91 NY2d 488; *Medtronic, Inc. v Lohr,* 518 US 470; *Independence Park Apts. v United States,* 449 F3d 1235; *Kargman v Sullivan,* 552 F2d 2; *Conille v Secretary of Hous. & Urban Dev.,* 840 F2d 105; *Topa Equities Ltd. v City of Los Angeles,* 342 F3d 1065; *Matter of Mott v New York State Div. of Hous. & Community Renewal,* 211 AD2d 147; *Catco Assoc., L.P. v Goodwin,* 7 Misc 3d 1020[A], 2005 NY Slip Op 50679[U].)

*Michael A. Cardozo, Corporation Counsel,* New York City (*Edward F.X. Hart* and *Jane L. Gordon* of counsel), for New York City Council and others, amici curiae. The courts below correctly recognized that, in amending the Section 8 voucher program to eliminate so-called "endless leases," Congress did not preempt local laws of general application that protect tenants. (*Cosmopolitan Assoc., L.L.C. v Fuentes,* 11 Misc 3d 37; *Manocherian v Lenox Hill Hosp.,* 84 NY2d 385; *Medtronic, Inc.*

*v Lohr,* 518 US 470; *New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins. Co.,* 514 US 645; *Balbuena v IDR Realty LLC,* 6 NY3d 338; *United States v Shimer,* 367 US 374; *Topa Equities, Ltd. v City of Los Angeles,* 342 F3d 1065.)

*Cadwalader, Wickersham & Taft LLP,* New York City *(Harry P. Cohen, Stacey A. Lara* and *Ryan J. Andreoli* of counsel), and *Susan A. Silverstein,* Washington, D.C., for AARP Foundation Litigation, amicus curiae. I. The provisions of state and local law at issue here are not preempted by the 1996 and 1998 amendments to the Section 8 voucher program. *(California Fed. Sav. & Loan Assn. v Guerra,* 479 US 272; *Pennsylvania Med. Socy. v Marconis,* 942 F2d 842; *Matter of Mott v New York State Div. of Hous. & Community Renewal,* 211 AD2d 147; *Drucker v Mauro,* 30 AD3d 37, 7 NY3d 844; *Pultz v Economakis,* 8 Misc 3d 1022[A], 2005 NY Slip Op 51238[U]; *Matter of David v New York City Conciliation & Appeals Bd.,* 59 NY2d 714.) II. Reversal of the Appellate Division's decision would undermine the purpose of the Section 8 voucher program.

## OPINION OF THE COURT

PIGOTT, J.

We hold that a landlord's determination to accept federal "Section 8" rent subsidy payments is a "term and condition" of a lease executed with a rent-stabilized tenant, within the meaning of Rent Stabilization Code (9 NYCRR) § 2522.5 (g) (1), so that a renewal lease must continue with that term and condition. Moreover, 42 USC § 1437f (d) (1) (B) (ii) does not preempt a rent-stabilized tenant's right to a renewal lease that includes the landlord's acceptance of a Section 8 subsidy.

Respondent Sonia Rosario has lived in a rent-stabilized apartment in New York City, owned by appellant Diagonal Realty, LLC, for over 30 years.[1] For most of that time, she has received Section 8 benefits from the New York City Housing Authority (NYCHA). The Section 8 system (Tenant Based Assistance: Housing Choice Voucher Program) is a federal program that provides housing assistance to eligible low-income families by giving subsidies to landlords who rent apartments to them *(see* 42 USC § 1437f). Once NYCHA has issued a Section 8 voucher to an eligible family, and the family has found a landlord willing to accept it, the landlord and NYCHA must sign a Housing Assistance Payments (HAP) contract *(see* 24 CFR 982.451). The

---

1. Her daughter and two grandchildren reside with her.

HAP contract specifies the terms of the landlord's participation in the Section 8 program. Section 8 tenants make rental payments based on their ability to pay, and NYCHA issues subsidy payments to the landlords to cover the balance of the agreed rent.

In February 2003, Diagonal informed NYCHA that it no longer wished to participate in the Section 8 program with respect to Rosario, and refused NYCHA's subsidy payments for her apartment. It then commenced a proceeding in the Civil Court of the City of New York to evict Rosario for nonpayment of rent.

Rosario and several other similarly situated plaintiffs commenced these actions against their respective landlords in Supreme Court, seeking a declaration that defendant landlords may not opt out of the Section 8 program. Supreme Court consolidated the actions and granted summary judgment in plaintiffs' favor, declaring that defendants "are obligated to continue accepting [plaintiffs'] section 8 rent subsidies and are not permitted to opt out of the federal section 8 rent subsidy program" (9 Misc 3d 681, 704 [2005]).

The Appellate Division affirmed, and then granted Diagonal's motion for leave to appeal to this Court. We now affirm.

■ New York State's Rent Stabilization Code requires that landlords provide renewal leases requested by rent-stabilized tenants (9 NYCRR 2522.5 [b] [1]), and that every renewal

> "shall be on *the same terms and conditions as the expired lease,* except where the owner can demonstrate that the change is necessary in order to comply with a specific requirement of law or regulation applicable to the building or to leases for housing accommodations subject to the RSL, or with the approval of the DHCR" (9 NYCRR 2522.5 [g] [1] [emphasis added]).

Diagonal does not claim that any of the exceptions apply, and the first question before us therefore is whether a landlord's prior acceptance of a Section 8 subsidy is a term of a lease that must be continued on a renewal lease. We hold that it is.

Landlords who accept Section 8 payments are required to include, in the leases that they sign with Section 8 beneficiaries, a "tenancy addendum" prescribed by the United States Department of Housing and Urban Development (HUD) (*see* 24 CFR 982.305 [a] [3]; 982.308 [b] [2]) or, if the landlord uses its own lease form, a "word-for-word" addition of the addendum's text

(24 CFR 982.308 [f] [2]). The tenancy addendum must specify, among other things, that "[t]he owner is leasing the contract unit to the tenant for occupancy by the tenant's family with assistance for a tenancy under the Section 8 housing choice voucher program" and that "[t]he tenant is not responsible for paying the portion of rent to [the] owner covered by the . . . housing assistance payment." By requiring such a tenancy addendum, the code makes acceptance of Section 8 subsidies a term of every lease that a landlord signs with a Section 8 tenant. Consequently, the obligation to accept Section 8 subsidy payments must continue in a renewal lease, as required by Rent Stabilization Code (9 NYCRR) § 2522.5 (g) (1).[2]

Diagonal suggests that this section of the Rent Stabilization Code is inapplicable because, when Rosario first signed a lease, she was not a Section 8 beneficiary. But 9 NYCRR 2522.5 (g) (1) makes no mention of a tenant's initial lease. It requires that a renewal lease "be on the same terms and conditions as the expired lease"—not necessarily the original lease. "Expired lease" means the lease that will have just expired when the renewal lease is to become effective.[3]

Diagonal further argues that the Rent Stabilization Code protections are preempted by federal law, citing 42 USC § 1437f. Section 1437f restricts the ability of landlords receiving Section 8 subsidies to evict tenants. It provides that "during the term of the lease, the owner shall not terminate the tenancy except for serious or repeated violation of the terms and conditions of the lease, for violation of applicable Federal, State, or local law, or for other good cause" (42 USC § 1437f [d] [1] [B] [ii]). The phrase "during the term of the lease" was added on October 21, 1998 (effective permanently) (Pub L 105-276, 112 US Stat 2461, 2607).[4] Before that date, landlords participating in the Section 8 program could not evict a tenant without establishing good cause, even if the tenant was at the end of a lease term; this was commonly referred to as the "endless lease rule." Diagonal contends that the 1998 amendment allows landlords receiving

**2.** The New York State Division of Housing and Community Renewal (DHCR) states in its amicus brief that it has abandoned the contrary view it expressed in *Matter of Highland Management Corp.* (No. QB10041RO, DHCR, Nov. 6, 2002).

**3.** Rent Stabilization Code (9 NYCRR) § 2523.5 (a) uses the clearer term "expiring lease" in the same context.

**4.** The phrase was first added on April 26, 1996, effective for fiscal year 1996 only (Pub L 104-134, 110 US Stat 1321, 1321-281).

Section 8 subsidies to terminate a tenancy without cause when the lease term is over, and that it preempts New York law requiring landlords to renew—with the same terms and conditions—rent-stabilized tenants' leases.

In deciding whether state law is preempted by federal law, the Court's "sole task is to ascertain the intent of Congress" (*California Fed. Sav. & Loan Assn. v Guerra*, 479 US 272, 280 [1987]; *see also Guice v Charles Schwab & Co.*, 89 NY2d 31, 39 [1996]).

> "Congressional preemptive intent may be discerned in three ways: (1) expressly in the language of the Federal statute; (2) implicitly, when the Federal legislation is so comprehensive in scope that it is inferable that Congress intended to fully occupy the 'field' of its subject matter; or (3) implicitly, when State law actually 'conflicts' with Federal law" (*Drattel v Toyota Motor Corp.*, 92 NY2d 35, 42 [1998]; *see also Guice*, 89 NY2d at 39; *Barnett Bank of Marion Cty., N. A. v Nelson*, 517 US 25, 31 [1996]).

Diagonal's preemption theory is belied by the legislative history, which shows that no preemption was intended. Indeed, the Senate Committee on Banking, Housing, and Urban Affairs could not have made the point more clearly when it reported that it did "not anticipate that the repeal of [the 'endless lease' rule] will adversely affect assisted households because *protections will be continued under State, tribal, and local tenant laws* as well as Federal protections under the Fair Housing Act and the Americans with Disabilities Act" (S Rep 195, 104th Cong, 1st Sess, at 32; S Rep 21, 105th Cong, 1st Sess, at 36 [identical language in both Senate Reports] [emphasis added]). The intent of Congress was to "streamline and simplify the [Section 8] program by reducing the involvement of the Federal government" and housing agencies (S Rep 195 at 31-32; S Rep 21 at 36). In other words, the legislative intent was to remove *federal* obstacles to landlords' participation in the Section 8 program.

HUD, moreover, introduced regulatory language clarifying that "[n]othing in part 982 [the federal regulations governing the Section 8 program] is intended to pre-empt operation of State and local laws that prohibit discrimination against a Section 8 voucher-holder because of status as a Section 8 voucher-holder" (24 CFR 982.53 [d]). This language was added in direct response to the 1998 amendments (*see* 64 Fed Reg 26632, 26641 [1999]). Thus, no intent to preempt state law is expressed in 42 USC § 1437f; in fact, the contrary is evident.

Turning to the question of implied preemption, it is clear that federal law does not so occupy the field of housing law that there is no room for state regulation. To the contrary, the states "have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular" (*Loretto v Teleprompter Manhattan CATV Corp.*, 458 US 419, 440 [1982]). In this area, federal and state law depend on each other; neither excludes the other.

Finally, there is no conflict between federal and state law such as would suggest implied preemption. First, it is not impossible to comply with both federal and state law in this area; a law-abiding landlord receiving Section 8 subsidies will follow both 42 USC § 1437f (tenants in general will not be evicted without good cause during their leases) and Rent Stabilization Code (9 NYCRR) § 2522.5 (g) (1) (rent-stabilized tenants' leases will be renewed with the same terms and conditions). Second, Rent Stabilization Code (9 NYCRR) § 2522.5 (g) (1) is no obstacle to accomplishing and executing the purpose of 42 USC § 1437f. The state regulation applies only to landlords of rent-stabilized property. The effectiveness of 42 USC § 1437f—as amended in 1998—in encouraging *free-market* landlords to participate in the Section 8 program is unaffected by the state regulation. We conclude that it was not the intent of Congress, when it ended the so-called endless lease rule, to remove state and local law protections afforded to Section 8 recipients.[5]

Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed, with costs. The certified question should not be answered upon the ground that it is unnecessary.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, SMITH and JONES concur.

Order, insofar as appealed from, affirmed, etc.

---

**5.** Diagonal receives a "J-51" tax abatement, pursuant to Administrative Code of the City of NY § 11-243. That section contains an antidiscrimination provision prohibiting landlords that receive J-51 abatements from discriminating against tenants who receive, or are eligible to receive, Section 8 assistance (*see* Administrative Code § 11-243 [k]). This local law is not preempted by federal Section 8 law for the same reasons that Rent Stabilization Code (9 NYCRR) § 2522.5 (g) (1) is not preempted (*see especially* 24 CFR 982.53 [d]).