OPINION OF THE COURT
Emily Jane Goodman, J.
Plaintiffs receive Section 8 vouchers pursuant to 42 USC § 1437 et seq., and have asked their landlords, who all receive J-51 tax abatements, to accept their vouchers. The J-51 law contains a provision which explicitly bars certain economic discrimination by landlords who receive public benefits in the form of tax abatements (Administrative Code of City of NY § 11-243 [k]). The landlord defendants have refused to accept plaintiffs’ vouchers and claim that they cannot be compelled to do so because participation in Section 8 is voluntary.[1] They further maintain that they have not discriminated against plaintiffs because their refusal to accept the Section 8 vouchers is attributable to the burdensome nature of the program. Subsequent to commencement of this action, numerous plaintiffs and defendants have settled their disputes and filed stipulations of discontinuance.[2]
The issues presented here must be viewed against the backdrop of New York City’s power to enact antidiscrimination laws which provide additional protections for the public, including Section 8 recipients, even where those protections compel an owner’s participation in the otherwise voluntary program. This litigation involves two such antidiscrimination laws: the *999 J-51 law and Local Law No. 10 (2008) of the City of New York, a recent amendment to the New York City Human Rights Law.[3]
Despite their argument that private landlords cannot be forced to accept Section 8, defendants concede that both the J-51 law and Local Law 10 compel them to accept vouchers from a prospective tenant, and a current tenant, if and only if, the landlord has previously agreed to accept a Section 8 voucher from that tenant. However, defendants argue that as plaintiffs are current tenants, tenants in residence who have not previously been in the Section 8 program in relation to the instant housing accommodations, plaintiffs are excluded from the protection of both laws.
The Motions
In motion sequence No. 002, plaintiffs move for summary judgment against defendants 56 Bennett, LLC, Royal Terrace Associates, 34 Realty LLC, 1560 LLC, Pinnacle Group doing business as Lexington NY Realty, LLC and Arbern 315 Ocean Parkway, LLC. Plaintiffs seek a determination that these landlords must accept their vouchers, but do not seek damages.
In motion sequence No. 005, plaintiffs move for summary judgment against defendants 231 Brightwater Court LLC, Kensington Imperial LLC, and Lichter Real Estate Number Two LLC, and seek a default judgment against defendants Royal Terrace Associates, 1560 LLC, Afternoon Delight Fifth Avenue Association and Fieldbridge Associates, LLC. Plaintiffs seek a determination that these landlords must accept their vouchers, but do not seek damages.
In motion sequence No. 005, defendant 1560 LLC cross-moves for leave to serve a late answer and for summary judgment, raising substantially similar arguments as the other defendants *1000 (discussed infra).[4] Defendants Lichter Real Estate Number Two LLC and 231 Brightwater Court LLC also cross-move for summary judgment, again raising substantially similar arguments.[5]
Local Law 10
A recent amendment to title 8 of the Administrative Code of the City of New York, known as Local Law 10, provides that an owner may not “refuse to sell, rent, lease, approve the sale, rental or lease or otherwise deny to or withhold from any person or group of persons such a housing accommodation or an interest therein . . . because of any lawful source of income of such person” and may not “discriminate against any person . . . because of any lawful source of income of such person” (Administrative Code § 8-107 [5] [a] [1], [2] [emphasis added]). The term “lawful source of income” includes “section 8 vouchers” (Administrative Code § 8-102 [25]). As set forth above, defendants argue that Local Law 10 applies only to a prospective tenant and to a current tenant, if and only if, the landlord has previously agreed to accept Section 8 from that tenant. They contend that the only “sensible” and “practical” interpretation of Local Law 10 excludes protection of a current tenant with *1001 whom the landlord had not had an existing agreement to accept Section 8 during the course of the tenancy.
The text of a statute is the clearest indicator of legislative intent, and the words of a statute should be given their plain meaning (see Flores v Lower E. Side Serv. Ctr, Inc., 4 NY3d 363 [2005]). In relation to housing, Local Law 10 makes it unlawful to refuse to rent or otherwise deny “any person” a housing accommodation or interest therein and to discriminate against “any person” because of any lawful source of income, without distinction as to whether that person is a prospective tenant or tenant in residence (see Administrative Code § 8-107 [5] [a] [1], [2]). As the statute itself makes no distinction between prospective and current tenants, but unambiguously protects “any person,” no such intent or distinction can be inferred. Moreover, courts should not construe statutes, rules or regulations in a manner which would lead to “absurd and unexpected consequences” (see Wetzler v Roosevelt Raceway, 208 AD2d 120, 129 [1st Dept 1995]). Such a result would be reached if, for example, plaintiffs vacated their apartments and moved back in. Defendants recognize that at that point they would be obligated to accept the Section 8 vouchers. This is an absurd result, and there is no rational reason why a prospective tenant would be protected, while a tenant in residence would not, assuming the income of both tenants is sufficiently low, a prerequisite to qualify for Section 8 assistance (see 42 USC § 1437f [o] [4]).[6]
Further, the preamble to Local Law 10 specifically refers to “current tenants.” Although a preamble is not part of a statute, it may be used as an aid to its interpretation (see McKinney’s Cons Laws of NY, Book 1, Statutes § 122). The preamble states in relevant part:
“Section 1. Legislative Intent. The Council hereby finds that some landlords refuse to offer available units because of the source of income tenants, *1002 including current tenants, plan to use to pay the rent. In particular, studies have shown that landlords discriminate against holders of section 8 vouchers because of prejudices they hold about voucher holders. This bill would make it illegal to discriminate on that basis.” (Local Law No. 10 [2008] of City of NY § 1.)
Ignoring the reference to “current tenants,” defendants cite to the words “available units,” arguing that such language evidences an intent to exclude tenants in residence because those units cannot be considered “available.” They further cite the City Council’s press room release No. 024-2008 (Mar. 26, 2008), clearly not part of the law, announcing that the City Council planned to override Mayor Bloomberg’s veto of Local Law 10, which, in fact, it did. The press release stated in relevant part: “Members of the City Council will vote to override Mayor Bloomberg’s veto of legislation to prohibit discrimination against prospective tenants based on lawful source of income.”[7]
However, defendants fail to cite the next sentence of the press release which provides in relevant part: “This legislation protects New Yorkers from housing discrimination and supports those with limited incomes [sic] find and maintain affordable housing by maximizing the use of Section 8 vouchers” (emphasis added).
Defendants further cite to the Report of the Governmental Affairs Division, by the Committee on General Welfare of the New York City Council, dated March 26, 2008, discussing the need of persons to “obtain” affordable housing, to “locate” an apartment and to alleviate difficulties in “securing” an apartment, and noting the benefits to “prospective tenants” in “finding” housing, based on a law prohibiting income discrimination. Defendants also point out that Local Law 10 does not apply to housing accommodations of five or fewer units, except “to tenants subject to rent control laws who reside in housing accom *1003 modations that contain a total of five or fewer units” (Administrative Code § 8-107 [5] [o] [i]). Thus, they argue that because Local Law 10 specifically refers to tenants in residence in this one instance only, Local Law 10 is applicable to current tenants in that situation only. However, such an interpretation would lead to the irrational result that a rent-controlled tenant in a building with five or fewer units would be protected by Local Law 10, but a rent-controlled tenant in a building of six or more units would not.[8]
Defendants’ additional argument is that because they have thus far permitted the tenants to remain in their apartments, despite refusing to accept the tenants’ vouchers, they have not refused to “rent... or otherwise deny to or withhold from any person . . . such a housing accommodation or an interest therein” or discriminated “in the terms, conditions or privileges of the . . . rental or lease of any such housing accommodation or an interest therein or in the furnishing of facilities or services in connection therewith.” (Administrative Code § 8-107 [5] [a] [1], [2].) Thus, defendants unpersuasively argue that they are not denying a housing accommodation or any privilege incident thereto, because plaintiffs cannot demonstrate that “but for” the Section 8 subsidy, plaintiffs will lose their apartments.
In Kosoglyadov v 3130 Brighton Seventh, LLC (54 AD3d 822 [2d Dept 2008]), the Court held that the landlords violated the J-51 law, which prohibits withholding of “any of the dwelling accommodations in such property or any of the privileges or services incident to occupancy therein” (Administrative Code § 11-243 [k]), by refusing to accept a Section 8 voucher from long-term tenants. In reaching this determination, the appellate court did not require the tenants to demonstrate that they could not otherwise afford to continue to rent the apartment, even though they had already been residing there for many years. As Local Law 10 contains substantially similar language to the J-51 law, the result would not be any different. Moreover, defendants’ interpretation would be inconsistent with the purpose of Local Law 10 — to prevent discrimination based on any “lawful source of income.”
In light of the clear language of Local Law 10 prohibiting discrimination against “any person” based on any “lawful *1004 source of income” including “section 8 vouchers” and in light of the failure of defendants to demonstrate that the legislative history of Local Law 10 supports their strained interpretation, the court concludes that Local Law 10 was intended to apply to both prospective and current tenants and is violated when a landlord refuses to accept a Section 8 voucher. Even if defendants have accepted Section 8 vouchers from some tenants in their buildings, plaintiffs have established a prima facie case of discrimination, and defendants have failed to raise a triable issue of fact (see Kosoglyadov, 54 AD3d at 824 [by refusing to accept tenants’ Section 8 vouchers, tenants established a prima facie case that the landlords violated the J-51 law and landlords failed to raise a triable issue of fact]).[9]
J-51 Law
Administrative Code § 11-243 (k) states that an owner receiving its benefits cannot:
“[D]irectly or indirectly deny to any person because of . . . the use of, participation in, or being eligible for a governmentally funded housing assistance program, including, but not limited to, the section 8 housing voucher program . . . any of the dwelling accommodations in such property or any of the privileges or services incident to occupancy therein.”
Defendants advance the same arguments in connection with the J-51 law as they have regarding Local Law 10 — that the J-51 law does not apply to tenants already in residence if the landlord had not previously agreed to accept Section 8 from that tenant. They concede that in Rosario v Diagonal Realty, LLC (8 NY3d 755 [2007]) and Kosoglyadov v 3130 Brighton Seventh, LLC (54 AD3d 822 [2008], supra), the appellate courts have already determined that tenants in residence are entitled to the protection of the J-51 law, but attempt to distinguish *1005 those cases on the ground that the landlords there had previously agreed to accept Section 8 from the plaintiffs.[10]
To support their distinction between prospective and current tenants, defendants cite Mayor Dinkins’ public hearing reference to the law as protecting “potential tenants” and the Report of the Committee on Housing and Buildings referring to the problem of a landlord’s refusal to rent a unit based on income. Further, they make the same arguments made in connection with Local Law 10 — that the J-51 law speaks to the denial of a lease or the privileges which are part of a tenancy, and, that by merely refusing to accept Section 8, they have not refused to rent or have denied any privileges or service in connection with the leases.
However, as with Local Law 10, the J-51 law does not exclude tenants already in residence. Both laws contain broad and unambiguous language protecting “any person” from discrimination because of participation in Section 8. Further, in light of the holding in Kosoglyadov (54 AD3d 822 [2008], supra), the distinction between prospective and current tenants is not viable since the Court held that the landlords violated the J-51 law by refusing to accept the long-term tenants’ voucher. Although defendants attempt to distinguish Kosoglyadov on the basis that the original lease had provided that Section 8 subsidies would be accepted, the decision was not based on the Rent Stabilization Code’s requirement to renew leases on the same terms and conditions, but rather, was based on the J-51 law. Had the Court in Kosoglyadov accepted defendants’ distinction between prospective and current tenants, they would not have found a violation of J-51 law. Moreover, defendants’ argument that they do not violate the J-51 law by merely refusing to accept a voucher (as opposed to refusing to rent or provide some service) is unpersuasive for the same reasons that those arguments are unavailing as to Local Law 10.
Accordingly, plaintiffs are entitled to summary judgment based on defendants’ violation of the J-51 law, as well as Local *1006 Law 10 {id. [landlords violated the J-51 law by refusing to accept tenants’ Section 8 vouchers]).[11]
Preemption
Post-submission, certain defendants argued by letter that the J-51 law is preempted by federal law, citing Mother Zion Tenant Assn. v Donovan (55 AD3d 333 [1st Dept 2008]). In that case, the First Department found that the federal law preempted a New York City law, known as Local Law No. 79 [2005] of the City of New York. In that case, the federal law allowed a landlord, who received below-market interest rates and mortgage insurance for 40-year mortgages, to exit Section 8 after 20 years if the mortgage was repaid. Local Law 79 provided that a landlord who wished to exercise its right under the federal law to exit Section 8, was required under Local Law 79 to sell its building to its tenants at a rate set by an appraiser. However, as plaintiffs note in their post-submission letter, the appellate court in Mother Zion Tenant Assn. made a point of distinguishing state or local antidiscrimination laws from its determination that Local Law 79 was — unlike antidiscrimination laws— preempted (see Mother Zion Tenant Assn. v Donovan, 55 AD3d at 336-337).
Further, the Court of Appeals in Rosario has already held that the J-51 law was not preempted by federal law (8 NY3d at 764 n 5). Moreover, in Kosoglyadov, the Court also found that the landlords’ refusal to accept the tenants’ Section 8 vouchers violated the J-51 law because “[d] espite the voluntary nature of the section 8 program at the federal level, state and local law may properly provide additional protections for recipients of section 8 rent subsidies even if those protections could limit an owner’s ability to refuse to participate in the otherwise voluntary program.” (Kosoglyadov, 54 AD3d at 824.) Accordingly, the J-51 law is not preempted.[12]
It is hereby ordered, adjudged and declared that with respect to motion sequence No. 002, plaintiffs are granted summary judgment against defendants 56 Bennett, LLC, Royal Terrace Associates, 34 Realty LLC, 1560 LLC, Pinnacle Group doing business as Lexington NY Realty, LLC and Arbern 315 Ocean *1007 Parkway, LLC based on defendants’ violation of Local Law 10 and the J-51 law and those defendants are directed to accept plaintiffs’ vouchers and execute all documents necessary to effectuate acceptance of Section 8 within 10 days hereof; and it is further ordered, adjudged and declared that with respect to motion sequence No. 005, except as noted in footnote 5, plaintiffs are granted summary judgment against defendants 231 Bright-water Court LLC, Kensington Imperial LLC, Lichter Real Estate Number Two LLC and 1560 LLC based on defendants’ violation of Local Law 10 and the J-51 law and those defendants are directed to accept plaintiffs’ vouchers and execute all documents necessary to effectuate acceptance of Section 8 within 10 days hereof; and it is further ordered, adjudged and declared that with respect to motion sequence No. 005, plaintiffs are granted a default judgment against defendants Royal Terrace Associates, Afternoon Delight Fifth Avenue Association and Fieldbridge Associates, LLC based on defendants’ violation of Local Law 10 and the J-51 law and those defendants are directed to accept plaintiffs’ vouchers and execute all documents necessary to effectuate acceptance of Section 8 within 10 days hereof; and it is further ordered that with respect to motion sequence No. 005, the cross motion of defendant 1560 LLC is granted solely to the extent of granting permission to serve a late answer, which is deemed timely served and is otherwise denied, and, the cross motion of defendants Lichter Real Estate Number Two LLC and 231 Brightwater Court LLC is denied; and it is further ordered that the remainder of the action which seeks compensatory damages is severed and shall continue.

. In 1996, Congress amended the Section 8 program to eliminate the federal rule known as “take one, take all” which had required a landlord who accepted one Section 8 tenant to accept all Section 8 tenants. That repealed provision provided in relevant part that “[n]o owner who has entered into a contract for housing assistance payments ... on behalf of any tenant . . . shall refuse ... to lease any available dwelling unit... to a holder of a certificate of eligibility under this section” (42 USC § 1437f [former (t) (1) (A)]).

. “Plaintiffs” and “defendants” are used herein to refer to certain or all plaintiffs and/or intervened plaintiffs and certain or all defendants and/or intervened defendants.

. The verified complaint asserts a cause of action for discrimination in connection with the tenants’ receipt of Section 8, albeit under the J-51 law, as Local Law 10 was not yet in effect. After Local Law 10 was passed, the court requested briefs on its applicability to this litigation. While the general rule is that a party may not obtain summary judgment based on a unpleaded cause of action, a court may do so “if the proof supports such cause and if the opposing party has not been misled to its prejudice” (see Weinstock v Handler, 254 AD2d 165, 166 [1st Dept 1998]). Here, the proof supports a cause of action under Local Law 10, the facts and analysis are the same under both laws, and no party has been prejudiced because all litigants were given ample opportunity to brief the issue.

. 1560 LLC additionally argues that it declined to accept the voucher of a tenant, Camilerri, because she was a problem tenant who denies access and refuses to sign leases. Yet, that landlord offered her a recent renewal lease and did not initiate any eviction proceedings against her. Accordingly, this argument is specious under these circumstances.

. Lichter and Brightwater additionally argue that plaintiffs’ motion should be denied for failure to attach various documents (e.g., leases, Section 8 vouchers and proof of financial condition). Despite the sworn affidavits of plaintiffs, they further maintain that plaintiffs have not demonstrated that the tenants asked their landlords to accept their vouchers. By virtue of plaintiffs’ summons and complaint, defendants cannot dispute that they are aware that plaintiffs have asked them to accept their vouchers. Therefore, defendants’ argument would be relevant to damages only, which is not the subject of the motions. Lichter and Brightwater further argue that New York County is an improper venue, and, that plaintiffs failed to name and serve the Housing Authority as a necessary party. However, those arguments were already rejected in the court’s decision and order, dated February 4, 2008. The request by Brightwater to dismiss the deceased plaintiff Dmitriy Vaynshteyn’s claim, based on lack of substitution of an estate is denied, with leave to renew, as it was raised for the first time in a reply. Lichter further argues that it declined to accept the voucher of a tenant, Gontsovskaya, because her grandson Juushailov is also named on the lease and the landlord presumes the voucher is only in Gontsovskaya’s name. The same argument is made by Brightwater concerning the tenant Litvinova who is a cotenant on the lease with Burmakin, and is also made concerning another tenant, Tepman. This issue has not been sufficiently briefed and therefore, plaintiffs’ motion is denied as to these plaintiffs, with leave to renew.

. Defendants complain that plaintiffs have never actually alleged their need for, and dependence upon, Section 8 to remain in residence, even though they have demonstrated their eligibility for Section 8 to the satisfaction of the Section 8 administrators. Defendants make the flawed assumption that tenants in residence are not protected by the statutes at issue because they have in the past paid rent, without the assistance of Section 8, and have, for example, been able to maintain an apartment through a senior citizen rent increase exemption. Defendants claim that plaintiffs would have to establish that “but for” receipt of Section 8 relief, the tenants would face eviction. Apart from the fact that plaintiffs may lose their apartments if defendants do not accept their vouchers, there is no basis for this “but for” theory in the statutes or existing appellate law.

. By letter dated February 29, 2008, Mayor Bloomberg, in vetoing the bill, said that the amendment “while well intentioned, would force private landlords to participate in a public program even at a cost of their bottom lines” and “that the onus should be on government to make the program more attractive.” He also noted that Local Law 10 “essentially makes a voluntary program involuntary” and prevents private landlords “from making sound business decisions regarding the disposition of their own property and mandates them to enter into a contract with a government agency they would otherwise never have had to engage.” However, rent stabilization and rent control laws are also “involuntary” laws, which regulate private landlords, but are legitimate exercises of government power.

. As plaintiffs maintain, the more reasonable interpretation for the carve out to section 8-107 (5) (o), which exempts buildings of five or less units from Local Law 10, is to create a limited class of small landlords who are exempt from Local Law 10 (except where a tenant is rent-controlled) and is not intended to enumerate a limited class of tenants entitled to protection.

. Defendants also unpersuasively argue that to compel them to accept vouchers from tenants already in residence contravenes the Rent Stabilization Code because it requires them to add new terms and conditions to preexisting rent-stabilized leases. However, as noted by plaintiffs, the Rent Stabilization Code requires that a lease be renewed on the same terms and conditions as the prior lease “except where the owner can demonstrate that the change is necessary in order to comply with a specific requirement of law or regulation.” (See 9 NYCRR 2522.5 [g] [1].)

. While the specific holding in Rosario is based on the Rent Stabilization Code’s requirement that a lease must be renewed on the same terms and conditions as the prior lease, the Court stated in a footnote that the J-51 law was not preempted by federal law for the same reasons that the Rent Stabilization Code was not preempted, i.e., because Congress did not intend “to remove state and local law protections afforded to Section 8 recipients” (Rosario, 8 NY3d at 764 n 5). It would have been illogical for the Court to have made this statement if it did not conclude, as did the lower court, that the J-51 law also required the landlord to accept the Section 8 vouchers from the eligible tenants in residence.

. Defendants’ argument, that plaintiffs have no private right of action to sue for damages under the J-51 law because the law is silent on enforcement and because the appropriate remedy should be the loss of the J-51 tax abatement, is unpersuasive (see Kosoglyadov, supra).

. Although defendants have not argued that Local Law 10 is preempted by federal law, this court concludes that it would also not be preempted for the same reasons that the J-51 law is not preempted.