Cadillac Leasing L.P. v Demoyano (2025 NY Slip Op 25082)

[*1]

Cadillac Leasing L.P. v Demoyano

2025 NY Slip Op 25082

Decided on April 2, 2025

Civil Court Of The City Of New York, Queens County

Ibrahim, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on April 2, 2025
Civil Court of the City of New York, Queens County

Cadillac Leasing L.P., Petitioner,

against
Iris Demoyano, ET. AL., Respondents.

Index No. 310360/2024

For Petitioner: Daniels Norelli Cecere & Tavel PC 
272 Duffy Avenue 
Hicksville, New York 11801 
For Respondent: Queens Legal Services 
89-00 Sutphin Blvd 
5th Floor
Jamaica, New York 11435

Shorab Ibrahim, J.

Recitation, as required by C.P.L.R. § 2219(a), of the papers considered in review of this motion.
Papers Numbered
Order to Show Cause Seeking Summary Judgment (NYSCEF Doc. 19), With Attorney Affirmation (Doc. 11), Client Affirmation (Doc. 12, Memorandum of Law (Doc. 10) and Exhibits (Docs. 13-18) 1
Affirmation in Opposition (NYSCEF Doc. 21) 2
Affidavit in Opposition (NYSCEF Doc. 22) 3
Opposition Exhibits (NYSCEF Docs. 23-26) 4
After argument on March 6, 2025, and upon the foregoing cited papers, the decision and order on this motion is as follows:
RELEVANT FACTS AND PROCEDURAL POSTURE
The petitioner seeks to evict Iris Demoyano ("respondent") from the subject rent-stabilized apartment for alleged failure to sign a renewal lease as required by the Rent Stabilization Code ("RSC"). (see Petition and Fifteen-Day Notice together at NYSCEF Doc. 1). Respondent obtained counsel, filed an answer, and this motion for summary judgment ensued.
Respondent moves for summary judgment on three distinct grounds: (1) that the initial lease's rent was improperly set and, as such, any renewal based on that improper rent is itself [*2]improper; (2) that the renewal was not served personally or by mail, as required by the RSC; (3) and that the respondent, in fact, signed the renewal lease.
DISCUSSION
Summary Judgment Standard
On a motion for summary judgment facts must be viewed in the light most favorable to the non-moving party; the motion must be denied where the moving party fails to demonstrate there are no material issues of fact. (see Scurry v New York City Hous. Auth., 39 NY3d 443, 457 [2023]; Vega v Restani Const. Corp., 18 NY3d 499, 503 [2012]). Only when the movant submits evidence in admissible form that demonstrates the absence of triable issues does the burden shift to the non-moving party to establish there are material issues of fact requiring a trial. (see Bazdaric v Almah Partners, LLC, -NE3d-, 2024 NY Slip Op 00847 [2024], citing Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). If the respondent can conclusively establish that the renewal offer runs afoul of the RSC requirements, or that she properly renewed the lease, summary judgment in her favor would be appropriate. (see Haberman v. Neumann, 2003 NY Slip Op 50031[U] [App Term, 1st Dept. 2003])
The court addresses each of respondent's arguments in turn.
Improper First Rent
The vacancy lease commenced on January 30, 2023, and ended on January 29, 2024. The monthly rent was $2,241.63. Attached to the lease is an executed Guaranty and a Vacancy Lease Rent Calculation rider on a Division of Housing and Community Renewal (DHCR) form. That form explains the increase from the prior legal regulated rent of $2,090.36. Petitioner took a 3.25% increase ($67.95) per the Rent Guidelines Board (RGB), and another $83.33 based on $15,000 in apartment improvements.[FN1]

The RSC requires that an initial lease be for one or two years, "at the tenant's option." (see RSC § 2522.5(a)(1) [" . . . the owner shall provide to the tenant a copy of the fully executed lease for a one- or two-year term, at the tenant's option . . . within 30 days from the owner's receipt of the vacancy lease signed by the tenant."); see also Archer 1, LLC v Rivera, 82 Misc 3d 1252(A), 2 [Civ Ct, Queens County 2024]). Respondent does not quarrel with the rent increase per se. She simply alleges that she was not given the two-year option. (see Respondent's affirmation at NYSCEF Doc. 12). This alleged failure, respondent argues, renders the rent in that first lease improperly set.
There is case law that supports this argument. (see Ink 967-969 Willoughby, LLC v Cordero, 74 Misc 3d 128(A), 1 [App Term, 2nd Dept, 2nd, 11th & 13th Jud. Dists. 2022]). In Cordero, cited by respondent, it was "undisputed that the tenant was not given the option of a one-year or two-year lease for her initial, vacancy lease and that such lease did not contain a rent stabilization rider." (id. [emphasis added]). The court concluded that under these circumstances, the landlord was not entitled to collect a vacancy increase.[FN2]
It follows that a tenant is not required [*3]to sign a renewal that seeks increases "based upon the improper initial rent." (id. at 2); see also Housing Dev. Assoc. LLC v Gilpatrick, 27 Misc 3d 134(A), 1 [App Term, 1st Dept. 2010] (improper increase where only a 56-week term offered).
Here, there is a dispute. Petitioner's agent avers that the lease simply memorialized the one-year term that respondent had requested. (see NYSCEF Doc. 22, par. 3 (" . . . had Respondent requested a two-year vacancy lease, the lease . . . would have contained a two-year term.")). In other words, petitioner alleges both timeframes were offered, and the respondent chose the one-year option. Respondent points to no statutory or case law that the requires the vacancy lease to state both options in the body of the executed lease. Furthermore, there is no dispute the vacancy lease attached the required rider. (see NYSCEF Doc. 13). Indeed, that rider informed the respondent that she could choose between the one or two-year terms. In any event, considering there are dueling affidavits, this is clearly a triable issue of fact necessitating the denial of summary judgment on this ground. (see Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
The Lease Renewal Improperly Served Electronically
RSC § 2523.5(a) requires that renewal leases be delivered personally or by regular mail. Respondent alleges that the petitioner only offered the renewal electronically. (see NYSCEF Doc. 12, par. 7). Respondent argues that "[e]lectronic delivery of renewal leases is only permissible where a tenant signs" a form authorizing same. (see Attorney Affirmation at NYSCEF Doc. 10, citing HLP1 MRU LLC v Qriqib, 85 Misc 3d 1201(A) [Civ Ct, Queens County 2025]).
In the memorandum in support of the motion, counsel unequivocally states "Respondent never signed any form authorizing electronic delivery of renewal leases." (NYSCEF Doc. 10 [emphasis added]). Respondent, on the other hand, simply does not "remember signing anything allowing my landlord to send renewal leases electronically." (NYSCEF Doc. 12, par. 6).
In response, petitioner's agent, Daniel Doody, affirms that respondent willingly signed a consent for electronic renewal, the lease was sent to the respondent and her guarantor [via docusign], that respondent signed the lease and returned it, but the guarantor did not sign. (see NYSCEF Doc. 22).[FN3]
Mr. Doody states that the guaranty was repeatedly sent to the guarantor and that he personally advised the respondent each time they spoke that the lease is not renewed without a guarantor. (see id).
Petitioner also attaches the DHCR form titled "Electronic Lease Offer: Tenant's Voluntary Consent" apparently executed by the respondent. (see NYSCEF Doc. 23). The court notes that the electronic signature matches the one on respondent's affirmation in support of the instant motion, matches the renewal the respondent acknowledges she signed, and matches the signature on the parties' first lease. Petitioner also offers the voided lease apparently signed by the respondent on February 17, 2025. (see NYSCE Doc. 24).
As such, summary judgment cannot be granted on this ground.
To the extent that respondent argues electronic delivery of rent stabilized renewal leases [*4]is never permissible, this court disagrees. In HLP1 MRU LLC v Qriqib, 85 Misc 3d 1201(A), the court [Hon. Vijay Kitson] painstakingly details how DHCR came to issue Operational Bulletin 2022-1, and lists the steps a landlord must take to be allowed to serve leases electronically.[FN4]
The court concluded that, "absent a tenant's informed consent to receive Rent Stabilized Lease Renewal Offers Electronically, a landlord is relegated to offering a Renewal Lease via . . . mail or personal delivery." (id at 4-5). In Qriqib, the landlord did not obtain that consent. Here, it appears the landlord did obtain consent, used the correct form(s), and followed all required steps as detailed in Qriqib:
Owners who choose to offer an electronic lease must obtain the tenant's voluntary written consent on the EL-TVC Electronic Lease Offer: Tenant's Voluntary Consent Form.
Owners who choose to offer electronic leases are required to complete the form, sign it electronically or manually and serve it on the tenant by email, placement in an electronic portal, or by personal service/postal mail, if necessary, and the tenant can voluntarily agree to the offer and acceptance of a lease or lease renewal.
As a part of consent, the form requires that owners and tenants provide their respective email addresses. The email addresses provided may be changed upon subsequent notice if an alternative email address needs to be used for the purpose of executing the lease offer. Tenants who choose not to provide consent will not be deprived of any rights under the rent laws and regulations. (id at 4).
Delivering a lease renewal electronically with a tenant's consent does not impact any substantive rent stabilization rights. This process is authorized by DHCR, which has broad authority to promulgate rules relating to the rent stabilization scheme. (see Rent Stabilization Assn. of NY City v Higgins, 83 NY2d 156, 165 [1993]; see also, Festa v Leshen, 145 AD2d 49, 56 [1st Dept. 1989] (the Legislature . . . delegated to DHCR the authority to amend the Code . . . and to adopt a Code which, "in general, protects tenants and the public interest.").
Emailing lease renewals in the year 2025 hardly seems a threat to rent stabilization. (see Drucker v Mauro, 30 AD3d 37, 39 [1st Dept. 2006], appeal dismissed 7 NY3d 844 [2006] (holding that tenants cannot waive benefits of the RSC where the entire scheme could be undermined). In any event, whether the respondent consented to email service of the renewal lease, and whether the petitioner complied with DHCR's requirements in offering the lease electronically, are issue for trial. 
Was the Lease Properly Renewed?
There is no dispute that the first lease has a guarantor, and that the respondent could not obtain a guarantor to sign the renewal.[FN5]
(see NYSCEF Doc. 12, par 9). The real question is not [*5]whether the respondent signed the renewal (she did). Rather, it is whether she renewed upon the same terms and conditions as the expiring lease. The case law on this issue is in the petitioner's favor. 
Rent stabilized leases must be renewed on the same terms and conditions as the expiring lease. (see RSC § 2522.5(f)(1); Rosario v Diagonal Realty, LLC, 8 NY3d 755, 761 [2007]; East Eleventh Street Assocs. v Breslow, 256 AD2d 110, 110 [1st Dept. 1998]).
In practice, this requirement often benefits tenants. In Rosario, supra, the Court of Appeals held that "a Section 8 subsidy is a term of a lease that must be continued on a renewal lease." (8 NY3d at 761; see also Daley v M/S Capital NY, LLC, 44 AD3d 313, 314 [1st Dept. 2007]). In Breslow, supra, the court held that an attorney's fees provision not in the initial lease could not be added in renewals. (256 AD2d at 110). Certain preferential rents have been found to be a continuing term and condition. (see 201 East 164th Street Assocs, LLC v Calderon, 81 Misc 3d 1211(A), 2 [Civ Ct, Bronx County 2023]). Similarly, certain rent concessions survive into the renewal(s). (see La Barbera v Housing & Dev't Auth of the City of New York, 44 AD2d 835, 835-36 [2nd Dept. 1974]). It is improper to revoke provisions that state a landlord cannot unreasonably withhold consent to sublet. (see Mehlman Mgmt Corp v Meyers, 51 AD2d 949, 950 [1st Dept. 1976]).
However, the "same terms and conditions" provision is not solely for the benefit of tenants and does not always work in their favor. The Court of Appeals states as much in David v New York City Conciliation and Appeals Bd., (59 NY2d 714, 716 [1983] (the provision "affords a measure of protection to both parties by permitting the tenant to renew the lease on its original terms, with limited statutory adjustments, while protecting the landlord against the loss of the contractual rights for which it originally bargained.")). In David, the tenant had to accept a garage clause in the renewal lease [resulting in higher rent] even though she no longer needed the garage space.[FN6]

Requiring a guarantor is not for the rent stabilized tenant's benefit, but if one is included int the first lease, the tenant is required to obtain a guarantor for the renewal leases. In Sambr, LLC v Brown, the court held that the guaranty [in rent stabilized lease] "was material to the grant of the original lease." As such, when the tenant returned the renewal [signed] without a guarantor, the landlord properly rejected the lease as not being renewed on the same terms and conditions as the original. (see 2 Misc 3d 62, 63 [App Term, 1st Dept. 2004]). These are essentially the facts here.
Similarly, the Appellate Term, First Department in Levine v Segal held that "absent the guaranty [which had been revoked], the landlord was relieved of its renewal obligation under rent stabilization. (see 174 Misc 2d 998, 999-00 [1997]).
These cases are out of the First Department and this court sits in the Second Department. However, courts in this Department have followed Sambr, LLC and Segal. (see 1374 Boston [*6]Road, LP v Fountain House, 8 Misc 3d 1020(A), 3 [Civ Ct, Kings County 2005] (" . . . where a guarantor fails to sign on to a tenant's renewal lease, the landlord is protected by being relieved from the obligation to renew the lease.")). 
This court has no cause to question whether it is bound by these First Department precedent. (see generally People v Pestana, 195 Misc 2d 833, 836-38 [Crim Ct, New York County 2003]). Respondent did not offer any contrary authority, did not argue that the First Department cases misstate the law, did not argue for a change in the law, and did not argue that the status quo offends public policy.
Based on the above, summary judgment on this ground must be denied.
Public Policy Concern
Rent stabilization "...is necessary to preserve affordable housing for low-income, working poor and middle class residents in New York City." (Matter of Santiago-Monteverde, 24 NY3d 283, 289 [2014]; Manocherian v Lenox Hill Hosp., 84 NY2d 385, 389 [1994] (rent stabilization "intended to protect dwellers who could not compete in an overheated rental market, through no fault of their own...The regulation of this field has been maintained to prevent uncertainty, hardship and dislocation.") [internal citations and quotations omitted]); Dumont Green, LLC v Paul, 77 Misc 3d 1219(A), 3 [Civ Ct, Kings County 2019], citing Murphy v New York State Div of Housing & Community Renewal, 21 NY3d 649, 653 [2013] (the goal of the RSC is to "facilitate the availability of affordable housing for low-income residents."). 
Of course, not all prospective and current rent stabilized tenants are low income. Those who do, however, may find it difficult to secure a guarantor. Requiring potential and current rent stabilized tenants to obtain guarantors lease after lease might ultimately thwart the above stated policy goals of rent stabilization. In certain circumstances, it may also violate Local Law 10, which made it illegal for landlords to refuse to rent to a prospective tenant or current tenant based on the tenant's source of income. (see NYC Admin Code § 8-107(5)(a)(1); Timovsky v 56 Bennett, LLC, 23 Misc 3d 997, 1000-01 [Sup Ct, New York County 2009]). Recently, one court noted [in dicta] that requiring a tenant to secure a guarantor could run afoul of Local Law 10. (see 5503-805 St. Marks St. Brooklyn LLC v Webb 84 Misc 3d 1261(A), 1 [Civ Ct, Kings County 2025]).
However, the parties have not made these types of arguments and, as such, the court will not delve any further.
CONCLUSION
Based on the foregoing, respondent's motion for summary judgment is denied in all respects. 
This matter is adjourned to April 30, 2025, at 9:30 in Part B, Room 403 for a pre-trial conference.
This constitutes the decision and order of the court. It will be posted on NYSCEF.
Dated: April 2, 2025
Queens, New York
SO ORDERED,
HON. SHORAB IBRAHIM, JHC

Footnotes

Footnote 1:Under RGB Order #54, one-year leases commencing between October 1, 2022 and September 30, 2023 can include a 3.25% increase.

Footnote 2:Under RSC § 2522.8(a), a landlord may take RGB authorized increases in the vacancy lease. The type of vacancy increase at question in Cordero is no longer allowed.

Footnote 3:Mr. Doody, for his part, did not establish the lease had been served in either of the traditional ways. Although it might be "custom and practice to have all lease renewals mailed out by a third party," (NYSCEF Doc. 22, par. 4), petitioner offers no substantiating proof such custom was adhered to this time. 

Footnote 4:DHCR Operational Bulletin 2022-1, Issued on March 25, 2022 by the Deputy Commissioner for Rent Administration, is available here: https://hcr.ny.gov/system/files/documents/2022/04/operational-bulletin-2022-1.pdf (last accessed on March 31, 2025).

Footnote 5:The guaranty states that the "The Guarantor further agrees that his guaranty shall remain in full effect even if the lease is renewed, changed or extended in any way..." (NYSCEF Doc. 13). Generally, this language means the guarantor would remain liable under renewals. (see S Klein Family LLC v Deratafia, -NYS3d-, 2025 NY Slip Op 01780, 2 [1st Dept. 2025]). However, as rent stabilized leases are renewed, they have "no definite time to run," and the "guarantor may revoke and end its future liability by reasonable notice to the principal." (Levine v Segal, 174 Misc 2d at 999). The parties here have acted as though the guarantee was revoked.

Footnote 6:The facts in David are more thoroughly recited in the Appellate Division decision. (see 91 AD2d 581 [1st Dept. 1982]).