OPINION OF THE COURT
Debba A. James, J.
The motion of plaintiffs for partial summary judgment against defendants (1) declaring that so long as they receive a J-51 tax abatement, defendants, as owners of the buildings where plaintiffs reside, must accept Section 8 vouchers from plaintiffs, who are current tenants of such buildings; (2) ordering that defendants enter into a Housing Assistance Payment contract for each of their respective plaintiff tenants with the New York City Housing Authority and execute all other necessary related documents, including the standard lead paint disclosure form, within 10 days from the date of this order; (3) ordering that the plaintiffs’ rent contribution be reduced to 30% of their income, which would be their rent contribution under the Section 8 program, until such time as defendants receive Section 8 subsidies for the respective plaintiffs; and (4) ordering that defendants refund all moneys collected in excess of their respective plaintiff tenants’ contribution under the Section 8 subsidy program as aforesaid, shall be granted.
There is no dispute as to the essential facts of this case. The Housing Act of 1937 (42 USC § 1437 et seq.) authorized a federal program commonly known as the Section 8 voucher program “[fjor the purpose of aiding low-income families in obtaining a decent place to live.” (42 USC § 1437f [a].) Under this program, the U.S. Department of Housing and Urban Development enters into contracts with local public housing agencies (PHAs) to have the PHAs administer the Section 8 subsidies. In plaintiffs’ case, the local PHA is the New York City Housing Authority (NYCHA), which issues vouchers to eligible applicants. A current tenant who is awarded a Section 8 voucher from NYCHA must present it to his or her prospective or current landlord. The landlord in turn executes a separate Housing Assistance Payment (HAP) contract with NYCHA, under which NYCHA will pay a portion of the tenant’s rent. Generally, and in *1144 plaintiffs’ case, the voucher recipient is responsible for paying 30% of his or her household income towards the monthly rent, and the landlord receives a subsidy from NYCHA for the balance.
In 1955, New York City enacted legislation to provide property owners with real estate tax abatements and exemptions as an incentive to perform certain rehabilitation and improvements to their buildings. This legislation is commonly referred to as the “J-51” tax abatement law because it appeared in former section J51-2.5 of the Administrative Code of the City of New York. (See Administrative Code § 11-243.) Under the J-51 law, a property owner receives a multiyear exemption from increases in real property taxes and an abatement of existing real-estate taxes based on the cost of improvements to the covered building.
Defendants here are landlords who receive real estate tax abatements. Plaintiffs are tenants of defendants, who have resided in their apartments for 12 years or more, and who are legitimate holders of Section 8 vouchers.
Two of the defendants have refused to accept the Section 8 vouchers from plaintiffs who reside in their buildings. The third defendant, One More Time Realty Corp., has refused to execute the lead paint disclosure form for its tenant. The form is part of the HAP contract. NYCHA will not process the voucher and contract without the completed lead paint disclosure form.
NYCHA has agreed to extend the expiration date of the vouchers of each of the plaintiffs pending resolution of this action.
Plaintiffs now move for partial summary judgment with respect to the first and second causes of action for declaratory and injunctive relief on plaintiffs’ claims that defendant landlords have unlawfully refused to accept the plaintiffs’ Section 8 vouchers and illegally discriminated against plaintiffs based on their income in contravention of the New York City Human Rights Law and the J-51 law.
Defendant One More Time Realty Corp. is the only defendant to submit opposition to the motion of its tenant, plaintiff Rivas. Therefore, the motion for partial summary judgment in favor of plaintiffs the Rakhmans and Roykhmans must be granted against defendants Aleo Realty I, L.P and Lichter Real Estate Number Two, LLC, respectively, without an appearance by those defendants on the motion.
With respect to owners who receive J-51 tax abatements, the J-51 law provides, in pertinent part:
*1145 “No owner of a dwelling to which the benefits of this section shall be applied, nor any agent, employee, manager or officer of such owner shall directly or indirectly deny to any person because of . . . the use of, participation in, or being eligible for a governmentally funded housing assistance program, including, but not limited to, the section 8 housing voucher program and the section 8 housing certificate program, 42 U.S.C. 1437 et. seq., . . . any of the dwelling accommodations in such property or any of the privileges or services incident to occupancy therein.” (Administrative Code § 11-243 [k] [emphasis added].)
The New York City Human Rights Law (NYCHRL) (Administrative Code of City of NY § 8-101 et seq.) was amended on March 26, 2008, to ban discrimination by landlords against tenants based on their lawful source of income, including Section 8 vouchers. NYCHRL § 8-107 (5) (a) (1) makes it an unlawful discriminatory practice for a landlord “[t]o refuse to . . . rent, lease, approve the . . . rental or lease or otherwise deny to or withhold from any person or group of persons such a housing accommodation or an interest therein . . . because of any lawful source of income of such person or persons.” Furthermore, it is unlawful to discriminate against “any person . . . because of any lawful source of income of such person ... in the terms, conditions or privileges of the . . . rental or lease of any such housing accommodation or an interest therein or in the furnishing of facilities or services in connection therewith.” (§ 8-107 [5] [a] [2].) The term “lawful source of income” is expressly defined to include “income derived from social security, or any form of federal, state or local public assistance or housing assistance including section 8 vouchers.” (NYCHRL § 8-102 [25].)
As argued by counsel for plaintiffs, most courts that have decided the issue whether a landlord’s refusal to accept Section 8 vouchers constitutes unlawful discrimination have done so on plaintiffs’ motions for summary judgment. (See Tapia v Successful Mgt. Corp., 24 Misc 3d 1222[A], 2009 NY Slip Op 51552[U], *1 [Sup Ct, NY County, July 20, 2009]; Timkovsky v 56 Bennett, LLC, 23 Misc 3d 997 [Sup Ct, NY County, Feb. 17, 2009]; Matter of Rizzuti v Hazel Towers Co., L.P., NYLJ, Apr. 2, 2008, at 27, col 1, 2008 NY Misc LEXIS 2176, *1 [Sup Ct, NY County 2008]; Kosoglyadov v 3130 Brighton Seventh, LLC, 18 Misc 3d 362 [Sup Ct, Kings County 2007], affd in relevant part 54 AD3d 822 [2d Dept 2008].)
*1146 In opposition, defendant One More Time Realty Corp. argues that summary judgment should be denied because it has neither denied plaintiff an accommodation nor discriminated against him, since it already provided him with a completed lead paint disclosure form, pursuant to 24 CFR 35.88 and 45.92, when he moved into the apartment 13 years ago. It contends that it discarded its records of compliance with the lead paint disclosure form mandate three years after plaintiff Rivas moved into the apartment in accordance with the retention schedule set forth in 24 CFR 35.92. It urges that because it has met its obligations in connection with the federal lead paint regulations, it may not be compelled to complete another lead paint disclosure form in connection with plaintiff’s application for Section 8 voucher benefits. One More Time asserts that somehow its execution of a new lead paint disclosure form “subjects Defendant and any other landlord to potential liability not envisioned by the federal lead paint'disclosure law,” though it offers no example of such potential liability. It claims that the reason that the federal regulation requires that a landlord give lead paint notice only once at the inception of the lease and not at any other time, unless new lead paint information is obtained by the landlord, is to protect a landlord from such potential liability. For that reason, defendant One More Time argues that having met its obligation to complete the lead paint disclosure form and provide a copy to plaintiff Rivas when he moved into the building more than a dozen years ago, pursuant to 24 CFR 35.88, it became plaintiff Rivas’s obligation to maintain the original form and supply it to NYCHA. Defendant concludes that it, as landlord, is absolved from any further duty in regard to lead paint disclosure.
The U.S. Department of Housing and Urban Development promulgated regulations in 1996 for the disclosure of lead based paint hazards in “target housing,” which is defined as housing constructed prior to 1978. 24 CFR 35.88 (a) requires every owner of target housing to disclose “the presence of any known lead-based paint and/or lead-based paint hazards” before a lessee is “obligated under a contract to . . . lease target housing.” Defendant One More Time is correct that it is required to retain the record of such certification and the tenant’s acknowledgment of the notice for no less than three years from the commencement of the leasing period. (See 24 CFR 35.92 [c] [1].) The court agrees with defendant to the extent that in 2000, it was free to discard the certification made and the acknowledg *1147 ment received in connection with plaintiff Rivas’s move into the building three years before. Defendant One More Time also accurately cites the enforcement provisions of the regulations. (See 40 CFR 745.118.)
With respect to the action at bar, however, defendant One More Time’s argument fails because the federal lead paint disclosure regulations that it cites apply to every owner of target housing throughout the United States, including all building owners in New York State whether or not they receive J-51 tax abatements.
As an owner who receives J-51 tax abatements, defendant One More Time has responsibilities with regard to tenants who are eligible for the Section 8 voucher program that go beyond those set forth in 24 CFR 35.88 et seq. In other words, defendant One More Time owes duties to its tenants that it would not have were it not a J-51 tax abatement recipient. Therefore, the regulations that defendant cites are irrelevant and inapplicable to its responsibilities under the J-51 law.
The regulations applicable to the case at bar were promulgated in September 1999 and are found at 24 CFR 35.1200 et seq. Their stated purpose is to “establish procedures to eliminate as far as practicable lead-based paint hazards in housing occupied by families receiving tenant-based rental assistance . . . under the Section 8 certificate program [and] the Section 8 voucher program.” (24 CFR 35.1200 [a].) NYCHA is required to conduct an initial supervisory quality control inspection of the apartment prior to the initial term of the lease and annually thereafter to determine if the apartment meets housing quality standards. (See 24 CFR 982.405.) Such an inspection clearly includes lead paint assessments. (24 CFR 35.1215.)
The court credits plaintiff Rivas’s lament that he took it upon himself to request an inspector of the New York City Department of Housing Preservation and Development (HPD) to survey his apartment for lead paint on January 28, 2009. As reflected in the report, the inspector found no lead paint. Indicative of its obduracy, defendant One More Time still refused to complete the lead paint disclosure form necessary for plaintiff to use his Section 8 voucher, notwithstanding that plaintiff provided a copy of the report to its officer.
Beyond mere obstinacy, the court determines, as a matter of law and fact, that defendant One More Time’s claim that it had a one-time obligation in connection with lead paint disclosure is disingenuous and a pretext for discrimination based on income *1148 source in violation of NYCHRL § 8-101. In addition, by withholding completion of the lead paint disclosure form that is part of the HAP contract, defendant One More Time has indirectly denied plaintiff Rivas the privilege of his housing accommodation in contravention of Administrative Code § 11-243 (k).
Though at this time plaintiff Rivas does not move for judgment with respect to his retaliation claim, the holdover summary proceeding for nuisance that defendant One More Time commenced only after this lawsuit was brought, its refusal to accept plaintiffs rent payments, and its assessment of late fees against plaintiff Rivas’s account are further evidence of a lack of good faith on One More Time’s part.
For the foregoing reasons, it is ordered that plaintiffs’ motion for partial summary judgment is granted as follows:
1. each defendant, as owner of a building that receives a J-51 tax abatement, must accept Section 8 rent subsidies from current tenants so long as the landlord receives the J-51 tax abatement pursuant to the antidiscrimination provisions of the New York City J-51 tax abatement law (Administrative Code § 11-243 [k]); and
2. the defendants shall and the defendants are ordered to accept plaintiffs’ Section 8 rent subsidy, to enter into a Housing Assistance Payment contract and to execute all other necessary related documents within 10 days from the date of this order; and
3. the plaintiffs’ rent contributions are reduced to 30% of their income, which would be their rent contribution under the Section 8 program, to wit:
a. plaintiffs Eduard Rakhman’s and Sofiya Rakhman’s monthly rent be and hereby is reduced to $335 from December 2008 forward until such time as defendants Aleo Realty I, L.P and Aleo Realty I, Inc. complete the necessary paperwork for the Section 8 program and other HAP contract requirements;
b. plaintiffs Isaak Roykhman’s and Larisa Roykhman’s monthly rent be and hereby is reduced to $335 from November 2008 forward until such time as defendants Lichter Real Estate Number Two, LLC, and Lichter & Lichter, L.P, complete the necessary paperwork for the Section 8 program and other HAP contract requirements;
c. plaintiff Angel Rivas’s monthly rent be and hereby is reduced to $231 from December 2008 forward until such time as defendant One More Time Realty Corp. completes the neces *1149 sary paperwork for the Section 8 program and other HAP contract requirements; and
4. it is ordered that the defendants shall refund all moneys collected in excess of their respective plaintiff tenants’ contribution under the Section 8 subsidy program for each month as listed until the date of judgment.