■ RAMONA TAPIA et al., Respondents, et al., Plaintiffs, v SUCCESSFUL MANAGEMENT CORP. et al., Appellants, et al., Defendants. VLADIMIR DREYTSER et al., Plaintiffs, and ALEKSANDR FLISFEDER et al., Respondents, v 195 REALTY, LLC, et al., Defendants, and WEST 187TH STREET PROPERTIES, INC., et al., Appellants. [915 NYS2d 19]—

Judgment, Supreme Court, New York County (Marcy S. Friedman, J.), entered August 12, 2009, as clarified by orders, same court and Justice, entered on or about January 29, 2010, granting plaintiffs' motion for declaratory and injunctive relief to the extent of declaring that the antidiscrimination clauses of the

J-51 law and Local Law No. 10 (2008) of the City of New York prohibit defendant landlords Successful Management, Arbern 315 Ocean Parkway, West 187th Street Properties and 1347 Ocean (appellants) from refusing to accept "Section 8" benefits from plaintiffs, and directing them to accept plaintiffs' Section 8 vouchers and execute all related documents to effectuate their acceptance, unanimously affirmed, with costs.

Plaintiffs, longtime tenants in rent-stabilized buildings who were recently approved for Section 8 benefits under 42 USC § 1437f and seek to use Section 8 vouchers to pay a portion of their rent, are protected by the J-51 antidiscrimination statute and Local Law 10 (Administrative Code of City of NY § 11-243 [k]; § 8-107 [5]; *Kosoglyadov v 3130 Brighton Seventh, LLC*, 54 AD3d 822 [2008]; *see also Jones v Park Front Apts., LLC*, 73 AD3d 612 [2010]). The plain language of the J-51 law prohibits a landlord receiving J-51 tax benefits from "directly or indirectly" denying a dwelling accommodation "or any of the privileges or services incident" thereto "to *any person* because of . . . [his or her] use of, participation in, or being eligible for a governmentally funded housing assistance program, including . . . the section 8 housing voucher program" (Administrative Code § 11-243 [k] [emphasis added]). Contrary to appellants' claim, the language does not distinguish between current and prospective tenants. Nor does the statute exclude tenants whose leases do not require their landlords to accept Section 8 benefits.

Similarly, the plain language of Local Law 10 prohibits discrimination against "any person or group of persons" by virtue of their "lawful source of income" (Administrative Code § 8-107 [5] [a] [1], [2]), which would include Section 8 vouchers. As with the J-51 statute, the language does not distinguish between current and prospective tenants. Nor does the statute exclude tenants whose leases do not require their landlords to accept Section 8 benefits. Accordingly, a plain reading of the statute does not support appellants' contention that it was only intended to protect prospective tenants or those with leases specifically permitting rental payments to be made with Section 8 benefits (*see Timkovsky v 56 Bennett, LLC*, 23 Misc 3d 997, 1001 [2009]).

Appellants' interpretation of these statutes lacks any basis in the text of the law and also makes no practical sense. As the motion court noted, under such interpretation, a landlord could refuse to accept the Section 8 voucher of an existing tenant, but would have to accept it if the tenant vacated the apartment and then moved back in. Such a reading would have to be rejected as leading to absurd results (*see id.*).

Appellants claim it is not discriminatory to refuse to accept Section 8 benefits from current tenants because they are not refusing to give these tenants a lease. However, it is discriminatory to "refus[e] to accept the means of payment proffered by [these tenants] solely because those means are obtained through a federal housing program" (*Kosoglyadov*, 54 AD3d at 824; *see also Cosmopolitan Assoc., L.L.C. v Fuentes*, 11 Misc 3d 37 [App Term 2006]). Indeed, appellants' refusal to accept Section 8 subsidies constitutes discrimination because it compels a tenant who wants to "use" a voucher or "participate" in the Section 8 program to seek housing elsewhere.

Even though the Section 8 program is voluntary, "state and local law may properly provide additional protections for recipients of section 8 rent subsidies even if those protections could limit an owner's ability to refuse to participate in the otherwise voluntary program" (*Kosoglyadov*, 54 AD3d at 824).

In support of their position, appellants selectively cite various documents related to Local Law 10's legislative history. However, these selective citations are unavailing and ignore the preamble to Local Law 10, which sets forth the legislative intent: "Legislative Intent. The Council hereby finds that some landlords refuse to offer available units because of the source of income tenants, *including current tenants*, plan to use to pay the rent. In particular, studies have shown that landlords discriminate against holders of section 8 vouchers because of prejudices they hold about voucher holders. This bill would make it illegal to discriminate on that basis." (*See* Local Law 10 § 1 [emphasis added]; Administrative Code § 8-101.)

Local Law 10 is not preempted by federal law. Indeed, in *Mother Zion Tenant Assn. v Donovan* (55 AD3d 333, 336-337 [2008], *lv dismissed in part and denied in part* 11 NY3d 915 [2009]), this Court recognized that the Section 8 program, while voluntary in nature, did not preempt local antidiscrimination laws. Furthermore, in *Rosario v Diagonal Realty, LLC* (8 NY3d 755 [2007], *cert denied* 552 US 1141 [2008]), the Court of Appeals held that the 1998 amendments to the Section 8 program, which permitted landlords to opt out of the program after expiration of tenants' leases, did not preempt either the rent stabilization law provision requiring leases to be renewed upon the same terms and conditions as expiring leases, or the J-51 antidiscrimination clause prohibiting landlords from discriminating against tenants who receive Section 8 assistance (*id.* at 764 n 5; *see also Kosoglyadov*, 54 AD3d at 824). While the issue in *Rosario* and *Kosoglyadov* was the J-51 law, the same reasoning applies to Local Law 10, as it is also an antidiscrimination

law providing many of the same protections as J-51 (*see Timk-ovsky*, 23 Misc 3d at 1006 n 12).

Nor does Local Law 10 violate the Urstadt Law (L 1971, ch 372, as amended by L 1971, ch 1012 [McKinney's Uncons Laws of NY § 8605]), which was intended to prohibit attempts, whether by local law or regulation, to expand the set of buildings subject to rent control or stabilization (*see City of New York v New York State Div. of Hous. & Community Renewal*, 97 NY2d 216, 227 [2001]). As the motion court succinctly noted, appellants' "acceptance of plaintiffs' Section 8 vouchers will have no impact in expanding the buildings subject to the rent stabilization law or expanding regulation under the rent laws, and thus does not offend the objective of the Urstadt Law." Concur—Tom, J.P., Friedman, DeGrasse, Freedman and Manzanet-Daniels, JJ. **[Prior Case History: 24 Misc 3d 1222(A), 2009 NY Slip Op 51552(U).]**