Estates NY Real Estate Servs. LLC v City of New York (2020 NY Slip Op 03093)





Estates NY Real Estate Servs. LLC v City of New York


2020 NY Slip Op 03093


Decided on May 28, 2020


Appellate Division, First Department


Webber, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 28, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Judith J. Gische, J.P.
Barbara R. Kapnick
Troy K. Webber
Peter H. Moulton, JJ.


155991/18 11012 

[*1]Estates NY Real Estate Services LLC, Plaintiff-Appellant,
v
The City of New York, et al., Defendants-Respondents.



Plaintiff appeals from an order of the Supreme Court, New York County (Julio Rodriguez, III, J.), entered June 5, 2019, which, to the extent appealed from as limited by the briefs, granted defendants' motion to dismiss the second amended complaint seeking an order declaring that the Human Resources Administration's security deposit voucher program does not fall within the "source of income" provisions of the New York City Human Rights Law, and that the program was prohibited by the Urstadt Law and Social Services Law § 143-c.




Rosenberg & Estis, P.C., New York (Jeffrey Turkel and Nicholas Turkel of counsel), for appellant.
Georgia M. Pestana, Acting Corporation Counsel, New York (Barbara Graves-Poller and Claude S. Platton of counsel), for respondents.



WEBBER, J.


In this declaratory judgment action, we are asked to determine whether the Human Resources Administration's security deposit vouchers constitute a "lawful source of income" under the City Human Rights Law (HRL) and whether the voucher program violates Social Services Law § 143-c or the Urstadt Law.
Plaintiff, Estates NY Real Estate Services LLC (Estates), acts as manager and leasing agent for multi-family apartment buildings throughout New York City. Defendants are the New York City Commission on Human Rights (Commission), which administers the City HRL, and the City of New York, which operates the New York City Human Resources Administration (HRA), an administrative unit of the New York City Department of Social Services.
The Underlying Dispute
In 2017, Latonya Walters completed an application for an apartment located at 2775 East 12th Street in New York City. At the time of the application, she informed the leasing agent, an employee of plaintiff Estates, that she intended to pay the security deposit by an HRA security voucher. Plaintiff's employee told Walters that plaintiff required a cash security deposit from all prospective tenants. On June 20, 2017, the employee wrote to the New York City Housing Authority (NYCHA) and stated that Estates was canceling Walters's application because "the landlord cannot accept security vouchers as a payment." In the spring of 2018, Walters contacted another Estates employee, and asked whether Estates had changed its policy. The employee advised her that it had not. Subsequent attempts by the Commission, which had been contacted by Ms. Walters, to resolve the matter failed.
Administrative Complaint
In July 2018, defendants filed a complaint against Estates claiming that, in refusing to accept the HRA security voucher, Estates had violated the HRL, which prohibits a landlord from denying housing to an individual based on her "lawful source of income" (Administrative Code of City of NY §§ 8-107[5][a][1][a], 8-107[5][a][1][b], & 8-107[5][c][1]).
Plaintiff commenced the instant declaratory judgment action alleging that the City had tried to force landlords to accept HRA security vouchers in lieu of a cash security deposit. Estates alleged three causes of action: a judgment declaring the "source of income" provisions of the HRL do not apply to HRA security vouchers; a judgment declaring the City's conduct was prohibited by the Urstadt Law, which prohibits any increase to the number of rent controlled or rent stabilized buildings; and a judgment declaring the City's conduct was prohibited by Social Services Law § 143-c, which governs security deposits paid by HRA.
Defendants moved to dismiss arguing plaintiff failed to state a cause of action. Supreme Court granted the motion to dismiss concluding that there was no meaningful distinction between the term "income" and "security deposit," or between "rent" and "security deposit," and further that the HRA security voucher is a "lawful source of income" for purposes of Administrative Code § 8-107(5)(a)(1).
Discussion
We find that the court correctly concluded that HRA's security deposit vouchers are a "lawful source of income" under the City HRL (Administrative Code § 8-102) and are therefore included in the HRL's prohibition against discrimination by a landlord against a prospective tenant because of "any lawful source of income" (Administrative Code § 8-107[5][a][1]). "The term lawful source of income' includes income derived from social security, or any form of federal, state or local public assistance or housing assistance including section 8 vouchers"[FN1] [*2](Administrative Code § 8-102; see Tapia v Successful Mgt. Corp., 79 AD3d 422 [1st Dept 2010]).
Administrative Code § 8-107(5) prohibits a landlord from refusing to accept a Section 8 voucher from an existing tenant or refusing a lease to a prospective tenant who seeks to pay rent with a Section 8 voucher (Rakhman v Alco Realty I, L.P., 81 AD3d 424 [1st Dept 2011]).
In Alston v Starrett City, Inc. (161 AD3d 37, 40 [1st Dept 2018]), this Court in addressing the City HRL, noted that the vouchers were used to cover rent as well as security deposits, however, we never expressly addressed the issue of whether security deposit vouchers constitute lawful sources of income. It is clear that the government-issued security vouchers constitute a form of public assistance and housing assistance. They are issued pursuant to Social Services Law § 143-c, contained in Title 1 of the Social Services Law, which is intended to "provide adequately for those unable to maintain themselves" (Social Services Law § 131 [1]). Social Services Law § 143-c(4) states that the section applies to "federally aided categories of public assistance." Clearly, they also constitute a form of housing assistance.
Plaintiff's arguments that the security deposit vouchers are not "income" because the term "income" applies to means of paying "rent," not means of paying a security deposit and that the City Council intended the phrase "lawful source of income" to refer only to cash, or cash equivalents, to pay rent are without merit. There is nothing in the statute or its legislative history to support such a conclusion.
In adding Administrative Code § 8—107(5), or "Local Law 10," to the City HRL, the City Council stated:
"The Council hereby finds that some landlords refuse to offer available units because of the source of income tenants . . . plan to use to pay the rent. In particular, studies have shown that landlords discriminate against holders of section 8 vouchers because of prejudices they hold about voucher holders. This bill would make it illegal to discriminate on that basis"
(Administrative Code § 8-101 [Provisions of Section 1 of LL 10/2008] [emphasis added]).
In subsequent discussions of the added code section, the City Council stated that Local Law 10 would help maintain affordable housing by maximizing the use of Section 8 vouchers or other forms of governmental rent payment in the City. The City Council further noted that the intent was to help those who have a Section 8 voucher to use that voucher quickly and to get to affordable housing. It was further contemplated that there would be other positive effects, such as reducing the level of homelessness and all the dislocation of families in the city. Plaintiff's arguments are also inconsistent with the requirement that the City HRL "be construed liberally" to accomplish its "uniquely broad and remedial purposes" (Administrative Code § 8-130 [a]).
The fact that the security vouchers are a guarantee of payment, rather than a cash payment, does not render them not "income," as they are an item of value, worth a payment of up to one month's rent on the tenant's behalf to compensate for unpaid rent or damages to an apartment.
While we disagree with Supreme Court's reasoning that the Department of Social Services may set the terms and conditions in such form "as the Department may require," we do find that dismissal of the third cause of action seeking a declaration that the voucher program [*3]violates Social Services Law § 143-c was proper [FN2]. Supreme Court correctly found that HRA's security deposit voucher program does not violate Social Services Law § 143-c.
Social Services Law § 143-c is titled "Avoidance of abuses in connection with rent security deposits." It states that whenever a landlord requires that the landlord be "secured" for nonpayment of rent or damages as a condition to renting an apartment to a public assistance recipient, a Department of Social Services official may, "in accordance with the regulations of the department secure the landlord by either of the following means at the option of the local social services official:
"(a) By means of an appropriate agreement between the landlord and the social services official, or
"(b) By depositing money in an escrow account, not under the control of the landlord or his agent, subject to the terms and conditions of an agreement between the landlord and the social services official in such form as the department may require or approve . . . "
(Social Services Law § 143-c[1]).
As noted by its title, Social Services Law § 143-c was enacted to prevent abuses of cash security deposits by both landlords, who previously retained cash deposits by making false claims for damages, and tenants, who converted cash deposits — paid from public assistance funds — to their own use after landlords returned them. By 1972, when the statute was enacted, the Department of Social Services calculated that it had little chance of recovering $25 to $30 million dollars in cash security deposits, due to such abuses. Thus, it was enacted to protect the City, not tenants.
Plaintiff's argument that the HRA security voucher is not an "appropriate agreement" with a landlord pursuant to Social Services Law § 143-c (1)(a), as a landlord is forced to accept the terms or be the subject of a complaint under the HRL is without merit.[FN3]
An enforceable agreement consists of an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound (Kolchins v Evolution Mkts, Inc., 128 AD3d 47, 59 [1st Dept 2015], affd 31 NY3d 100 [2018]). To the extent that a landlord signs the security voucher, the landlord has accepted the offer and agrees to be bound by the terms and conditions of the [*4]voucher.
While, as plaintiff argues, the landlord is essentially compelled to "agree" to accept the security voucher, the fact that anti-discrimination laws require a landlord to agree to accept the voucher, even if under protest, does not, standing alone, render it an inappropriate agreement, or a contract of adhesion. "Adhesion is found where the party seeking to enforce the contract use[s] high pressure tactics or deceptive language in the contract and where there is inequality of bargaining power between the parties . . . . In addition, it must be shown that the contract inflicts substantive unfairness on the weaker party"
(Precision Mech. v Dormitory Auth. of State of N.Y., 5 AD3d 653, 654 [2d Dept 2004] [internal quotation marks omitted]; see Molino v Sagamore, 105 AD3d 922 [2d Dept 2013]).
Plaintiff has failed to make such a showing. Plaintiff does not identify any terms that are substantively unfair to it in the voucher form. Plaintiff does not challenge the security voucher's requirement that proof of unpaid rent or damages be submitted and verified. Nor does plaintiff allege that HRA failed to pay plaintiff in any case where it sought payment pursuant to the guarantee in the voucher.
Nor do we find that the "threat" of being the subject of an anti-discrimination claim renders the agreement between the landlord and tenant voidable (see Yoon Jung Kim v An, 150 AD3d 590 [1st Dept 2017]). The threat to exercise a valid right does not constitute duress (Marine Midland Bank v Mitchell, 100 AD2d 733 [4th Dept 1984]).
Finally, we find that the voucher program does not violate the Urstadt Law (McKinney's Uncons Laws of NY § 8605). "The Urstadt Law was intended to check City attempts, whether by local law or regulation, to expand the set of buildings subject to rent control or stabilization'" (Alston v Starrett City, Inc., 161 AD3d at 39, quoting City of New York v New York State Div. of Hous. & Community Renewal, 97 NY2d 216, 227 [2001]). Here, a landlord's acceptance of such security deposit vouchers "will have no impact in expanding the buildings subject to the rent stabilization law or expanding regulation under the rent laws" (Tapia v Successful Mgt. Corp., 79 AD3d at 425 [internal quotation marks omitted]).
We have considered plaintiff's remaining arguments and find them unavailing.
Accordingly the order of the Supreme Court, New York County (Julio Rodriguez, III, J.), entered June 5, 2019, which, to the extent appealed from as limited by the briefs, granted defendants' motion to dismiss the second amended complaint seeking an order declaring that the Human Resources Administration's security deposit voucher program does not fall within the "source of income" provisions of the New York City Human Rights Law, and that the program was prohibited by the Urstadt Law and Social Services Law § 143-c, should be affirmed, without costs.
All concur.
Order Supreme Court, New York County (Julio Rodriguez, III, J.), entered June 5, 2019, affirmed, without costs.
Opinion by Webber, J. All concur.
Gische, J.P., Kapnick, Webber, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MAY 28, 2020
CLERK



Footnotes

Footnote 1: The Section 8 voucher program provides federal assistance to low-income families to help them rent housing in the private market. The program "works as a rental subsidy," where the New York City Housing Authority pays part of the family's share of rent to the landlord on the family's behalf (https://www1.nyc.gov/site/nycha/section-8/about-section-8.page [last accessed April 14, 2020]; see 42 USC § 1437f). Thus, unlike HRA's security vouchers, which guarantee future payment in certain circumstances, the Section 8 rent vouchers are cash rent payments to the landlord.

Footnote 2:To the extent defendants argue that plaintiff lacks standing to seek an order declaring the voucher program to be a violation of Social Services Law § 143-c and the Urstadt Law, they waived the argument by failing to raise it in their pre-answer motion to dismiss (CPLR 3211[a], [e]; Matter of Fossella v Dinkins, 66 NY2d 162, 167 [1985]).

Footnote 3:Plaintiff does not appear to argue that the program results in unconscionable agreements. In any event, defendants are correct that plaintiff failed to show, or raise any issue of fact whether, the vouchers were unreasonably favorable to defendants, as is required to establish an unconscionable agreement (Cash4Cases, Inc. v Brunetti, 167 AD3d 448, 449 [1st Dept 2018]; Mazursky Group, Inc. v 953 Realty Corp., 166 AD3d 432, 433 [1st Dept 2018]).