=================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 180
In the Matter of Mary Veronica
Santiago-Monteverde.

Mary Veronica
Santiago-Monteverde,
          Appellant,
        v.
John S. Pereira, &c.,
          Respondent.




          Ronald J. Mann, for appellant.
          J. David Dantzler, Jr., for respondent.
          City of New York; New York State Senator Brad Hoylman
et al.; New York City Bankruptcy Assistance Project et al., amici
curiae.




ABDUS-SALAAM, J.:

          The United States Court of Appeals for the Second

Circuit has certified a question to this Court which requires us

to resolve the following issue: May a bankruptcy debtor's

interest in her rent-stabilized lease be exempted from her

bankruptcy estate pursuant to New York State Debtor and Creditor

- 1 -

Law section 282 (2) as a "local public assistance benefit?"  We hold that section 282 (2) of the Debtor and Creditor Law (DCL) exempts a debtor-tenant's interest in a rent-stabilized lease.

I.

The debtor Mary Santiago-Monteverde has lived in her apartment at 199 E. 7th Street in Manhattan for over forty years. The apartment is rent-stabilized.  After her husband died in June 2011,  Santiago-Monteverde was unable to pay her credit card debts of approximately $23,000 and filed for Chapter 7 bankruptcy.  During the pendency of the bankruptcy proceedings, she remained current on her rent obligations.  She initially listed her apartment lease on Schedule G of her bankruptcy petition as a standard unexpired lease.  Shortly thereafter, the owner of the apartment approached the bankruptcy trustee, respondent John S. Pereira, and offered to buy Santiago-Monteverde's interest in the lease.  When the trustee advised her that he planned to accept the offer, she amended her filing to list the value of her lease on Schedule B as personal property exempt from the bankruptcy estate under DCL § 282 (2) as a "local public assistance benefit."

The Bankruptcy Court granted the trustee's motion to strike the claimed exemption on the ground that the value of the lease did not qualify as an exempt "local public assistance benefit" (In re Santiago-Monteverde, 466 BR 621, 622 [Bankr. SD NY 2012]).  The court noted that Santiago-Monteverde's counsel

did not dispute "that a rent-stabilized lease is the property of the estate and that the Trustee 'may assume or reject any executory contract or unexpired lease of the debtor'"(id., citing 11 USC § 365). The court reasoned that "the benefit of paying below market rent [ ] is not a 'public assistance benefit' that is entitled to any exemption in bankruptcy" and that the benefit "is a quirk of the regulatory scheme in the New York housing market, not an individual entitlement"(id. at 625).

The District Court affirmed the Bankruptcy Court(US Dist Ct, SD NY, 12 Civ 4238, Castel, J., 2012), holding that "the value in securing a lawful termination of the rent-stabilized lease . . . is a collateral consequence of the regulatory scheme and not a 'local public assistance benefit'" (id.).

On appeal to the Second Circuit, Santiago-Monteverde argued that "the lease (or its value) is a 'local public assistance benefit' because the value of the lease (in whole or in part) is traceable to the protections afforded to her under the [Rent Stabilization Code]" (747 F3d 153, 157 [2d Cir 2014]). Recognizing that this argument raises an open issue of New York law, the Second Circuit certified the following question to this Court: "Whether a debtor-tenant possesses a property interest in the protected value of her rent-stabilized lease that may be exempted from her bankruptcy estate pursuant to New York State [DCL] Section 282 (2) as a 'local public assistance benefit'?" (id. at 158).

II.

The Bankruptcy Code authorizes a bankruptcy trustee to "assume or reject any . . . unexpired lease of the debtor" (11 USC § 365 [a]).  As was noted by the Second Circuit, there is limited case law from both New York courts and bankruptcy courts holding that a trustee's authority under section 365 extends to rent-stabilized leases (see 187 Concourse Assocs. v Bunting, 175 Misc 2d 870 [Civ. Ct. 1997] and cases cited therein; see also In re Toldano, 299 BR 284, 292 [Bankr. SD NY 2003]; In re Stein, 282 BR 845 [Bankr. SD NY 2002]; In re Yasin, 179 BR 43, 49 [Bankr. SD NY 1995]).  In this case, the debtor's counsel acknowledged at the hearing before the Bankruptcy Judge that a rent-stabilized lease is property of the estate and that the Trustee had the power to assume the lease pursuant to section 365 (466 BR 621, 622).

Section 522 (b) of the Bankruptcy Code permits the debtor to exempt certain property from the bankruptcy estate, and section 522 (d) provides a list of property that may be exempt.  However, the Code also permits states to create their own list of exemptions, and New York has done so.  DCL § 282 sets forth the permissible exemptions in personal bankruptcy.  Debtors domiciled in New York have the option of choosing either the federal exemptions or New York exemptions (11 USC § 522 (b); DCL § 285).  DCL § 282 (2), entitled "Bankruptcy exemption for right to receive benefits" lists the following as exemptions:

> "The debtor's right to receive or the
> debtor's interest in: (a) a social security
> benefit, unemployment compensation or a local
> public assistance benefit; (b) a veterans'
> benefit; (c) a disability, illness, or
> unemployment benefit; (d) alimony, support,
> or separate maintenance, to the extent
> reasonably necessary for the support of the
> debtor and any dependent of the debtor; and
> (e) all payments under a stock bonus,
> pension, profit sharing, or similar plan or
> contract on account of illness, disability,
> death, age, or length of service . . . "

When the rent-stabilization regulatory scheme is considered against the backdrop of the crucial role that it plays in the lives of New York residents, and the purpose and effect of the program, it is evident that a tenant's rights under a rent-stabilized lease are a local public assistance benefit.

The Legislature has concluded that rent stabilization is necessary to preserve affordable housing for low-income, working poor and middle class residents in New York City.  As we said in Manocherian v Lenox Hill Hosp. (84 NY2d 385, 389 [1994]), "[t]he rent stabilization system began in 1969 to ameliorate, over time, the intractable housing emergency in the City of New York" due to a housing shortage which was caused by continued high demand and decreasing supply.  We noted in Manocherian that "[b]y regulating rents and providing occupants with statutory rights to tenancy renewals under rent stabilization . . . the State intended to protect dwellers who could not compete in an overheated rental market, through no fault of their own" (id. at 389).

The New York City Administrative Code provides that the City Council "finds that a serious public emergency continues to exist in the housing of a considerable number of persons within the city of New York," and that "unless residential rents and evictions continue to be regulated and controlled, disruptive practices and abnormal conditions will produce serious threats to the public health, safety and general welfare" (Administrative Code of City of New York § 26-501).

The rent-stabilization program has all of the characteristics of a local public assistance benefit.  It is plainly local in that it depends on periodic determinations by local authorities as to the continuing existence of an emergency in the particular jurisdiction.  The program is public as it was enacted by the New York Legislature and implemented by legislative and administrative bodies at both the state and local level.  Rent stabilization provides assistance to a specific segment of the population that could not afford to live in New York City without a rent regulatory scheme.  And the regulatory framework provides benefits to a targeted group of tenants - it protects them from rent increases, requires owners to offer lease renewals and the right to continued occupancy, imposes strict eviction procedures, and grants succession rights for qualified family members.

The Trustee argues that the benefits of rent-stabilization are unlike the other exemptions listed in DCL § 282 (2), such as social security benefits, unemployment compensation,

and alimony, support, or separate maintenance because those exemptions all involve periodic payments, while the rent-stabilization program does not involve payments to tenants. However, that argument ignores the reality of social programs such as food stamps, vouchers, medical care, discounted prescriptions, and the like, that do not involve payments to the recipients of the benefit. While many public assistance benefits are administered through programs that provide periodic cash payments, such payments are not a prerequisite to a benefit being in the nature of public assistance.

Furthermore, when the Legislature meant to refer only to "payments" in the DCL, it used that term. For example, in section 282 (2)(e), it exempted certain "payments" under pension and other plans. But it used the broader term "benefit" in section 282 (2)(a), indicating that benefits and payments are not the same. Likewise, the Legislature has demonstrated that the general term "public assistance" denotes more than cash payments. For example, the Social Services Law in effect when DCL § 282 (2)(a) was enacted provided that "public assistance and care includes home relief, veteran assistance, aid to dependent children, medical assistance for needy persons, institutional care for adults and child care granted at public expense" (Social Services Law § 2(18) [1982]). The current definition of public assistance is similar. Like other public assistance benefits exempted by New York law from a bankruptcy estate, the Rent Stabilization Law serves a select, defined group of New Yorkers

who struggle, in this case, to afford suitable housing.

The Trustee also argues that the benefit of a rent-stabilized tenancy cannot be a public assistance benefit because it is not subsidized by the government, as are the other benefits of social security and unemployment compensation listed in DCL § 282 (2). However, the rent-stabilization program is an exceptional regulatory scheme that enables a specifically targeted group of tenants to maintain housing in New York City. This uncommon regulatory program reflects the legislative intent to create a benefit for certain individuals who fall below certain income or rent thresholds, based upon the Legislature's conclusion that there is a continuing housing emergency.

While the rent-stabilization laws do not provide a benefit *paid for* by the government, they do provide a benefit *conferred by* the government through regulation aimed at a population that the government deems in need of protection. Among other things, the Rent Stabilization Law caps legal rents. Although the population that benefits from rent-stabilization may not meet the requirements for New York City public housing programs or Section 8 assistance, the government, recognizing that housing protection is necessary to benefit a specific group of tenants, has created a public assistance benefit through a unique regulatory scheme applied to private owners of real property.

There are other public assistance benefits that are, at least in part, regulatory in form. Medicare is an example of a government program that is not solely the creature of a

government subsidy.  Although the government does, to some extent, contribute to the cost of medical care for Medicare recipients, it also sets the rates that can be charged by doctors.  Medicare, like the rent-stabilization program is not strictly for the needy.  It is a public assistance benefit that regulates what doctors can charge for services, while rent-stabilization is a public assistance benefit that regulates the rents property owners can charge protected tenants.  While the classic examples of public assistance benefits may be solely government subsidized, or a mixture of subsidy and regulation as with Medicare, nothing prevents a targeted regulation from qualifying as a public assistance benefit.  The rare regulatory scheme of rent-stabilization is such a benefit.

Finally, as was recently noted by the United States Supreme Court, exemptions serve the important purpose of protecting the debtor's essential needs (Clark v Rameker, 134 S Ct. 2242, 2247 [2014][internal quotation marks and citation omitted]).  Affordable housing is an essential need.  Mindful that exemption statutes are to be construed liberally in favor of debtors (In re Miller, 167 BR 782, 783 [SD NY 1994]), the certified question should be answered in accordance with this opinion.

Mary Veronica Santiago-Monteverde v John S. Periera

No. 180

SMITH, J.(dissenting):

I dissent, because the majority grossly misreads Debtor and Creditor Law § 282 (2).

"Public assistance" is a common synonym for "welfare." It refers, in ordinary speech, to government subsidies for the poor, whether paid in cash or in kind.  The majority quotes a list of examples from former Social Services Law § 2 (18): "home relief, veteran assistance, aid to dependent children, medical assistance for needy persons, institutional care for adults and child care granted at public expense" (see majority op at 7). The current version of the statute adds "safety net assistance" (Social Services Law § 2 [18]).  Neither list includes rent control or rent stabilization, though they have long been and still are prominent features of life in New York.  Nor does the statutory list include any other regulatory program not involving a government subsidy.  In fact, I do not think I have ever seen or heard the words "public assistance" used to refer to such a program before this case, and the majority cites no example of such a use.

Ignoring the generally accepted meaning of "public

- 1 -

assistance," the majority chooses to interpret "public assistance benefits" in the Debtor and Creditor Law literally. The rent stabilization program is public, in the way that all government regulation is public; it "provides assistance to a specific segment of the population" that is in economic need; and it "provides benefits" to that same segment (majority op at 6). The same could be said of a great many programs -- e.g., minimum wage laws; antidiscrimination laws; workplace safety regulations -- that no one would think of calling "public assistance."

I would like to try asking every rent controlled or rent stabilized tenant in New York: "Do you receive public assistance?" I would be surprised to find even one (apart from those receiving government subsidies from other programs) who answered yes.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.27 of this Court's Rules of Practice, and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered in accordance with the opinion herein. Opinion by Judge Abdus-Salaam. Chief Judge Lippman and Judges Graffeo, Pigott and Rivera concur. Judge Smith dissents and votes to answer the certified question in the negative in an opinion in which Judge Read concurs.

Decided November 20, 2014