Newmont Props. LP v Callendar (2025 NY Slip Op 25006)

[*1]

Newmont Props. LP v Callendar

2025 NY Slip Op 25006

Decided on January 14, 2025

Civil Court Of The City Of New York, Kings County

Bacdayan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on January 14, 2025
Civil Court of the City of New York, Kings County

Newmont Properties LP, Petitioner,

against
Yvonne Callendar; John Doe; Jane Doe, Respondent.

L&T Index No. 301462-22

Law Offices of Scott Gross, Esq. (Scott Gross, Esq.), for the petitioner 
NYLAG (Kathleen Brennan, Esq.), for the respondent

Karen May Bacdayan, J.

Recitation, as required by CPLR 2219 (a) of the papers considered in review of this motion by NYSCEF Doc Nos.: 70-86.
PROCEDURAL HISTORY AND BACKGROUND
This is a licensee holdover proceeding which petitioner commenced after the expiration of the rent stabilized lease which was property of the estate of Yvonne Callendar's husband. Ms. Callendar ("respondent") retained counsel and interposed an answer claiming succession rights to this rent stabilized premises. Petitioner moved for leave to conduct discovery, and for use and occupancy pendente lite. (NYSCEF Doc No. 8, notice of motion [sequence 1].) The motion was settled on April 25, 2022, by a two-attorney, so-ordered stipulation in which the parties agreed to disclosure, and respondent agreed to pay $1,002.68 per month, the last monthly rent preserved in the last lease, pendente lite. (NYSCEF Doc No. 18, stipulation.) Respondent paid $1,002.68 per month pursuant to the stipulation for two years between July 2022 and July 2024. In August 2024, respondent ceased paying use and occupancy. (NYSCEF Doc No. 79, petitioner's attorney's affirmation in opposition ¶ 17.)
On August 2, 2024, the Hon. Remy Smith issued a decision and order awarding petitioner a judgment of possession against all respondents with the warrant of eviction to issue forthwith, execution of which was stayed through September 30, 2024 for respondents to vacate. (NYSCEF Doc No. 58, decision and order after trial.) In the decision after trial, the court framed the issue: "There is no dispute that the respondent Yvonne Callender was married to the deceased tenant of record ('TOR') Lisle Callender and is a remaining family member ('RFM'). The dispute is whether she resided in the premises as a bona fide co-occupant with the TOR for 2 years prior to his death on December 29, 2019 (relevant time period)." (Id. at 1.) The court found [*2]that respondent had failed to establish her co-residency of the subject premises with the tenant of record, her husband, from January 2017 through December 29, 2019, thus failing to establish her defense of succession rights to the subject premises. (Id. at 3.) Petitioner filed notice of entry on August 5, 2024, and respondent filed a notice of appeal on August 29, 2024. Respondent filed an amended notice of appeal on October 17, 2024. (NYSCEF Doc No. 66.) Said notice remains pending. (NYSCEF Doc No. 71, respondent's attorney's affirmation ¶ 23.) A marshal was assigned, and the marshal uploaded a notice of eviction to NYSCEF on November 22, 2024, with an earliest eviction date of December 9, 2024. (NYSCEF Doc No. 69.)
Three months after the original notice of appeal was served, respondent filed an order to show cause on November 27, 2024, requesting the court to set an undertaking. Upon timely deposit of the assessed undertaking pursuant to CPLR 5519 (a) (6), respondent would enjoy an automatic stay of the proceedings, including execution of the warrant, pending appeal.[FN1]
The Hon. Juliet Howard declined to sign the order to show cause, noting that more than two (2) months had passed since the August 2, 2024 decision/order after trial, and stated respondent could seek relief pursuant to CPLR 5704 (b) from the Appellate Term. (NYSCEF Doc No. 75.) On December 3, 2024, the Appellate Term signed respondent's application pursuant to CPLR 5704 (b) and the order to show cause was returned to the trial part for disposition. (NYSCEF Doc No. 78.)
Respondent argues that a stay pursuant to CPLR 5519 (a) (6) "is automatically triggered upon service of the [n]otice of [a]ppeal," (NYSCEF Doc No. 71, respondent's attorney's affirmation ¶¶ 28-30.) Quoting from Gur Assocs. LLC v Convenience on Eight Corp., 83 Misc 3d 903 (Civ Ct, NY County 2024), respondent argues that the purported late filing of the instant motion is, in fact, timely because an "undertaking may be given, and a copy served, at any time before the expiration of the time for appeal even though notice of appeal has been previously served." (Id. at ¶ 30.)
Respondent also sets forth—though she later claims through her attorney that she need not do so pursuant to CPLR 5519 (a) (6)—the merits of her appeal:
"I reside in a rent-stabilized apartment located at 488 Ocean Parkway, Apt. 2F, Brooklyn, New York 11218 ("subject premises"). [] On or about 1988, I moved into the subject premises where [Lisle] Callender, the tenant of record, was already residing. [] On or about March 13, 1997, Leslie Callender and I married. [] I lived with my husband at the subject premises until his death on December 30, 2019. [] Throughout my marriage my husband was abusive. [] His drinking often would coincide with the abusive [sic] forcing me to run away. [] Once I felt safe I would return home. [] I would also have my mailing, including my various bills, sent to another address to hide it from my husband. I fear[ed] that if he would see the bills he would be upset and become abusive. [] I was also employed as a live in nanny during the week and would be away from home. However, every weekend I would return home once I was done with work." (NYSCEF Doc No. 72, [*3]Callendar affidavit ¶¶ 1-9.)
Respondent's attorney argues that "the abuse and employment forced Ms. Callender to be away from her home [and] her absence is considered an excused absence for the purposes of succeeding to the subject premises. . . . Accordingly, Ms. Callender is entitled to succeed to the subject premises." (NYSCEF Doc No. 71, respondent's attorney's affirmation ¶ 19.) In the alternative, respondent seeks "a stay [of] the execution of the warrant for [respondent] to locate alternative housing." (NYSCEF Doc No. 78.) Respondent does not specifically cite to CPLR 2201 and RPAPL 753 (1) in her order to show cause; however, consistent with this prayer for relief, respondent's attorney cites to the aforementioned statutes in the affirmation in support.
In opposition, petitioner does not address the iterated merits of respondent's appeal. Petitioner notes that respondent has not perfected her appeal, nor served petitioner with any documents to settle the transcript, but does not specifically characterize respondent's motion as a dilatory tactic. (NYSCEF Doc No. 79, petitioner's attorney's affirmation in opposition ¶ 5.) Petitioner argues that controlling appellate authority mandates the denial of respondent's motion. Petitioner contends that respondent is precluded from seeking an automatic stay under CPLR 5519 (a) (6) because respondent did not move for an undertaking simultaneously upon filing its notice of appeal. (Id. ¶ 6.) In the event the court should not deny the motion in its entirety as untimely and sets an undertaking, petitioner seeks a hearing to determine the proper undertaking to prevent waste, and the amount of use and occupancy to be paid. Petitioner contends that "[w]hile the former tenant, Lisle Callender was a rent stabilized tenant, the next tenant will not be subject to rent regulation," and refers to unauthenticated leases for two unregulated apartments in the same building which rent for $2,010 and $1,930, respectively. (NYSCEF Doc No. 82, Spira affirmation ¶¶ 1, 6; NYSCEF Doc No. 84, petitioner's exhibit E, subleases.) Petitioner acknowledges that respondent paid use and occupancy from July 2022 through July 2024 pursuant to the stipulation settling its motion for use and occupancy. Thus, respondent owes $4,010.72 in use and occupancy for August 2024 — December 2024 accruing at $1,002.68 per month. (NYSCEF Doc No. 79, petitioner's attorney's affirmation in opposition ¶ 17.) Referring to the ledger, NYSCEF Doc No. 83, petitioner's exhibit D, petitioner claims a total of $23,488.44 is due in rent arrears under the lease and use and occupancy through December 2024. (NYSCEF Doc No. 79, petitioner's attorney's affirmation in opposition ¶ 18.) With regard to prospective use and occupancy pending determination of respondent's appeal, which petitioner's agent estimates to be 30 months, petitioner seeks prospective use and occupancy in what is estimated to be $2,000 a month, or $60,000 total estimated loss of income during litigation of the appeal. (NYSCEF Doc No. 82, Spira affirmation ¶¶ 9-10.) Petitioner further speculates that the undertaking should be set at $365,000.00, a number calculated based on sales of one-bedroom apartments at the subject building. (Id. ¶ 7.)
In reply, respondent's rejects the case law relied upon by petitioner as "not analogous." (NYSCEF Doc No. 86, respondent's attorney's reply affirmation ¶ 23.) Respondent also posits that, because "[respondent] has a limited income, an undertaking that forces [respondent] to tender more then [sic] the lawful regulated rent would severely prejudice her ability to litigate her appeal." (Id. ¶ 25.)
DISCUSSION
Gur Assocs. LLC v Convenience on Eight Corp, 83 Misc 3d 903 (Civ Ct, NY County 2024)
Both respondent and petitioner cite to the recent decision in Gur Assocs. LLC v Convenience on Eight Corp, 83 Misc 3d 903 (Civ Ct, NY County 2024). Analysis of Gur is [*4]instructive for framing this court's discussion of the difference between an automatic stay without a court order pursuant to CPLR 5519 (a) (6), and a court ordered discretionary stay pursuant to CPLR 5519 (c).
In Gur, the landlord commenced a holdover proceeding against its commercial tenant based on the illegal, unlicensed use of the premises as a marijuana dispensary. Petitioner therein prevailed at trial, and the respondent filed a notice of appeal within 30 days from the filing of a notice of entry. Respondent therein, Convenience on Eight Corp., simultaneously moved the court for (1) an undertaking and automatic stay pending appeal pursuant to CPLR 5519 (a) (6), and (2) a court ordered discretionary stay on such terms as may be just pursuant to CPLR 2201.[FN2]

The parties do not dispute that CPLR 5519 (a) (6) is applicable to summary holdover proceedings. (See e.g. Mountbatten Equities v Tabard Press Corp., 87 Misc 2d 861, 864 [Civ Ct, NY County 1976] [discussing cases], affd on other grounds 88 Misc 2d 831 [App Term, 1st Dept 1976]; Andrada Owners Corp. v DiGrazia, 38 Misc 3d 1219(A), 2013 NY Slip Op 50153(U), *3 [Civ Ct, NY County 2013] ["[D]espite the lack of appellate authority directly on point, many trial courts have held that the CPLR §5519(a)(6) is applicable to summary proceedings (internal citations omitted)."]) CPLR 5519 (a) (6) states in relevant part:
"(a) Stay without court order. Service upon the adverse party of a notice of appeal or an affidavit of intention to move for permission to appeal stays all proceedings to enforce the judgment or order appealed from pending the appeal or determination on the motion for permission to appeal where:
. . .
6. the appellant or moving party is in possession or control of real property which the judgment or order directs be conveyed or delivered, and an undertaking in a sum fixed by the court of original instance is given that the appellant or moving party will not commit or suffer to be committed any waste and that if the judgment or order appealed from, or any part of it, is affirmed, or the appeal is dismissed, the appellant or moving party shall pay the value of the use and occupancy of such property, or the part of it as to which the judgment or order is affirmed, from the taking of the appeal until the delivery of possession of the property (emphasis added)[.]"
Neither party has addressed CPLR 5519 (c), except implicitly. CPLR 5519 (c) provides:
"Stay and limitation of stay by court order. The court from or to which an appeal is taken or the court of original instance may stay all proceedings to enforce the judgment or order appealed from pending an appeal or determination on a motion for permission to appeal in a case not provided for in subdivision (a) or subdivision (b), or may grant a limited stay or may vacate, limit or modify any stay imposed by subdivision (a), subdivision (b) or this subdivision, except that only the court to which an appeal is taken may vacate, limit or modify a stay imposed by paragraph one of subdivision (a)."
The Gur court denied that branch of the commercial tenant's motion requesting that the court order a discretionary stay with less onerous conditions pursuant to CPLR 2201, opining that "given that the stay is sought in connection with an appeal, the analysis should be the same [*5]as a discretionary stay sought pursuant to CPLR 5519 (c)." (Gur Assocs. LLC, 83 Misc 3d at 905.) After rejecting application of CPLR 2201 to a stay pending appeal, the court sua sponte analyzed the request for a discretionary stay pursuant to CPLR 5519 (c),[FN3]
opining that, just as under CPLR 2201—and consistent with Court of Appeals precedent—when considering a CPLR 5519 (c) discretionary stay in the context of an undertaking pending appeal, a court will weigh, inter alia, "the harm that might result to the appellant if the stay is denied, and the potential prejudice to the respondent if the stay is granted." (Id. at 906 [internal citations omitted]; see Da Silva v Musso, 76 NY2d 436, 443 n 4 ("[T]he court entertaining the application [pursuant to CPLR 5519 [c]] is duty-bound to consider the relative hardships that would result from granting (or denying) a stay (internal citation omitted).") Considering the relative hardships, the Gur court credited the landlord's argument that the equities weighed in favor of the landlord, "which could be exposed to civil and criminal liability if the unlicensed retail sale of cannabis were allowed to continue on the premises pending the appeal," and found that a discretionary stay pursuant to CPLR 5519 (c) was not warranted. (Gur Assocs. LLC, 83 Misc 3d at 905.)
Having determined that a discretionary stay pursuant to CPLR 5519 (c) was not appropriate under the circumstances, the court's analysis continued pursuant to the automatic stay provisions of CPLR 5519 (a) (6), opining that "a showing of merit is not required by CPLR § 5519 (a) (6). . . . The only role for the court under CPLR 5519 (a) (6) is to set the amount of an undertaking." (Id. at 908 [internal citations and quotation marks omitted].) Indeed, courts have characterized an undertaking set pursuant to CPLR 5519 (a) (6) to be a "mandatory and ministerial" act and that a court's sole function is to determine "the amount of the undertaking" to be posted. (Brown v 99 Sutton LLC, 2002 WL 1275171, *2 [Civ Ct, Kings County 2002].) Noting that an undertaking is only effective to stay the proceeding after it is served and filed pursuant to CPLR 2505,[FN4]
the Gur court set an undertaking pursuant to CPLR 5519 (a) (6) and ordered that the undertaking be served and filed pursuant to CPLR 2505.
Petitioner's Argument that Respondent's Motion Must Be Denied as Untimely
Petitioner argues that the instant motion must be denied on the basis that respondent did not move for an undertaking simultaneously with the service and filing of the notice of appeal as required by CPLR 5519 (a) (6). In support of its position, petitioner cites to Tencza, 149 Misc 2d 403 (Sup Ct, Oneida County 1990), also cited in Gur, supra, for the proposition that a plain reading of 5519 (a) requires that an undertaking be set within the same 30 days required to file a notice of appeal.
In Tencza, the Supreme Court issued an order and judgment directing defendant to specifically perform on a contract for the purchase of property. Defendant timely filed a notice of appeal. Then, more than 30 days after filing the notice of appeal, defendant filed a motion requesting the court to set the amount of an undertaking in order to automatically stay all proceedings to enforce the judgment pending appeal. Prior to making the motion in Supreme Court, defendant made an application to the Appellate Division, Fourth Department for a stay, which was denied. Defendant moved to reargue the denial of a stay at the Appellate Division. At oral argument before Supreme Court on the pending motion for an undertaking, defendant sought, and was granted, an adjournment on the basis that a motion to reargue was pending before the Appellate Division. Nearly three months later, the Appellate Division denied defendant's motion to reargue. The motion for an undertaking was then ripe for review by the Supreme Court. Despite having found "no reported case involving the time within which the conditions imposed by CPLR by paragraphs (2) through (6) of CPLR 5519 (a) must be performed," the Supreme Court held that a strict statutory construction of CPLR 5519 (a) (6), "mandates the conclusion that defendants were required to comply with both CPLR 5519 (a) (5) and (6), prior to or contemporaneously with the service of the notice of appeal (emphasis added) (internal citation omitted)." (Tencza, 149 Misc 2d at 405-406.) Respondent's motion was denied as untimely.[FN5]
Tencza is not controlling.
Six years later and nearly three decades ago, in Pauk v Pauk, 232 AD2d 386 (2d Dept 1996), the Appellate Division, Second Department cited to Tencza. Petitioner argues that "[a]s the Appellate Division specifically endorsed the Tencza interpretation of CPLR 5519 (a) (6), this court must also do so." (NYSCEF Doc No. 79, petitioner's attorney's affirmation in opposition ¶¶ 9-11.) Petitioner's argument, ostensibly viable, is not compelling.
Pauk involved family law and domestic relations issues. No reported decision, appellate or otherwise, cites to Pauk for the proposition that strict interpretation of CPLR 5519 (a) (6) requires a motion for an undertaking be filed simultaneously with a notice of appeal. The Second Department has widely cited to Pauk, but only for propositions involving marital property and equitable distribution, not undertakings. Only one distinguishable reported trial court decision cites to Pauk: Vintage Flooring & Tile, Inc. v DCM of NY LLC, 44 Misc 3d 1229 (A), 2014 NY Slip Op 51376 (U) (Sup Ct, Kings County 2014). Citing to Pauk and Tencza in a footnote, the Vintage Flooring & Tile court held that an undertaking was "ineffective," not due to untimeliness of a motion, but because, even if timely paid, "respondent has not demonstrated any proof that the [u]ndertaking was ever filed with the clerk of the court pursuant to CPLR 2505 (emphases added)." (Vintage Flooring & Tile, Inc., 2014 NY Slip Op 51376 [U], *2 n 5.) This is not the argument advanced by petitioner herein. Accordingly, this court is not bound to follow Pauk.
Pauk is an outlier, and it cannot reasonably be said that Pauk or Tencza should apply in this context to disenfranchise respondent of her right to appeal a decision which, without an [*6]appeal, will lead to respondent's certain eviction within this calendar year. Almost 30 years after the Pauk decision was issued, only one distinguishable trial court decision cites to Pauk. (Vintage Flooring and Tile, supra). And only two decisions other than Pauk cite to Tencza, neither of which are controlling and both of which are distinguished herein (to wit, Vintage Flooring and Tile, and Gur).
It is an understatement to observe that there is a paucity of guidance regarding the application of CPLR 5519 (a) (6) in the high-stakes context of residential holdover proceedings in which an occupant seeks to become a rent stabilized tenant in their own right. In the context of this residential holdover, a stringent application of CPLR 5519 (a) (6) as advanced by petitioner exalts form over substance. (See Braschi v Stahl Assocs. Co., 74 NY2d 201, 215 [1989] [Bellacosa, J., concurring] [defining "eviction from one's home" as "one of the harshest decrees known to the law" and setting precedent by finding flexibility in the law to prevent displacement of a nontraditional family member.]) Indeed, the Court of Appeals has embraced a "liberal policy . . . concerning leave to file an undertaking on appeal after the law day has passed[.]" (Morris v Brokab Corp., 192 Misc 1012, 1013 [City Ct. 1948], citing U.S. Hat Co. of New York v Title Guarantee & Tr. Co., 273 NY 586, 586 [1937] [granting motion to dismiss appeal "unless appellant files and serves record and undertaking on appeal and pays $10 costs within ten days, in which event the motion is denied."]; Labieko v Am. Piano Co., 268 NY 639 [1935] [same]; Goldberg v Weihman, 268 NY 638 [1935], affd 269 NY 537 [1935] [denying motion to dismiss an appeal as an "undertaking was served and filed prior to the submission of the motion to dismiss the appeal."])
Given the veritable absence of authority applying CPLR 5519 (a) (6) to residential holdovers involving succession rights in a rent stabilized premises, this court adopts the more liberal view of the Court of Appeals and will not deny respondent's motion based on her failure to seek an undertaking contemporaneously with the filing of the notice of appeal. The competing interests of the parties cannot be lightly disregarded in favor of a bright-line rule with no support in caselaw, controlling or otherwise.
Sua Sponte Consideration of Respondent's Motion Pursuant to CPLR 5519 (c)
Petitioner has requested a hearing to determine the fair value of an undertaking and use and occupancy pending appeal. The court finds that a hearing is warranted based on the lack of caselaw directly on point, the significant import of an undertaking to both parties, and "the public interest uniquely involved[.]" (A.K. Estates v 454 Cent. Corp., LLC, 32 Misc 3d 1233 [A], 2011 NY Slip Op 51568 [U], * 4 [Nassau Dist Ct 2011].) Using the remedial purposes of the Rent Stabilization Law as a guiding principle, the court finds that a broader, more flexible approach to undertakings in the context of appeals of decisions that deny succession rights to long term, rent stabilized family members better serves the purposes and public policy behind rent stabilization, "[t]he central, underlying purpose of [which] is to ameliorate the dislocations and risk of widespread lack of suitable dwellings that accompany a housing crisis (internal citation and quotation marks omitted)." (Federal Home Loan Mortg. Corp. v New York State Div. of Hous. & Cmty. Renewal, 87 NY2d 325, 332 [1995].)[FN6]
 Accordingly, the court will [*7]consider respondent's application for an undertaking as one for a discretionary stay made pursuant to CPLR 5519 (c).[FN7]
The potential harm claimed by both parties cannot be ignored.
On the one hand, should respondent prevail on appeal, she will avoid displacement and benefit from affordable housing during her elder senior years. On the other hand, petitioner may suffer from loss of significant income should it be required to litigate an appeal. On the one hand, should this court foreclose respondent's appeal by denying the instant motion as untimely, respondent's displacement is inevitable. Respondent is unlikely to locate affordable housing in New York City, given that prospective renters are facing "the tightest housing market in the city in over 50 years,"[FN8]
and with statistics recently reported by the Rent Guidelines Board in May 2024 noting that "[i]n 2023, at least 9,694 housing units left rent stabilization and approximately 5,524 units entered, for a net estimated loss of 4,170 rent-stabilized units, a 61% greater net loss of units compared to the prior year, and the largest decline in eight years."[FN9]
On the other hand, if petitioner is successful in regaining possession of respondent's apartment, the premises will become deregulated and could be rented for substantially more at fair market value. Petitioner claims rent arrears due and owing under the lease and since its expiration in the amount of almost $25,000, estimates a loss of $60,000 at fair market rent while litigating the appeal, and stands to forego hefty profits from a potential sale of the premises as a cooperative unit. For petitioner, this case represents one of the rare opportunities after the passage of the Housing Stability and Protection Act of 2019 for a rent stabilized apartment to be deregulated after vacatur of the tenant of record.[FN10]

It is acknowledged that respondent has not moved pursuant to CPLR 5519 (c), although respondent has advanced equitable arguments.[FN11]
Support for this sua sponte consideration of [*8]relief not specifically requested is grounded in controlling appellate law. In Tirado v Miller, 75 AD3d 153 (2d Dept 2010), the Appellate Division, Second Department affirmed the Supreme Court, finding that it had providently exercised its discretion in granting a non-dispositive motion on a ground different from that which was argued by the parties to the motion. The Appellate Division reasoned that "the court's grant or denial of relief [was] confined to the specific family of relief sought in the motion." (Tirado, 75 AD3d at 154.) Here, as in Tirado, the motion before the court is not of dispositive import, although, as a practical matter, denial of respondent's motion could foreclose her right to appeal the trial court decision, with potentially devastating results. In Tirado, as here, "the notice of motion also contained a general prayer, 'for such other and further relief as [the] [c]ourt may deem just and proper.'" (Id. at 158; cf Rosenblatt v St. George Health & Racquetball Assocs., LLC, 119 AD3d 45 [2d Dept 2016] [reversing the trial court for denying a dispositive summary judgment motion on a ground that the parties did not litigate.])
Additional support for this court's sua sponte consideration of the motion under CPLR 5519 (c) is also found in trial court decisions involving landlord-tenant issues which are specific to undertakings. (See Gur Assocs. LLC, 83 Misc 3d 903, 905-906 (sua sponte considering a motion for an undertaking pursuant to CPLR 5519 (c), rather than CPLR 2201]; A.K. Estates v 454 Cent. Corp., LLC, 32 Misc 3d 1233 [A], 2011 NY Slip Op 51568 [U] [Nassau Dist Ct 2011] [modifying and setting undertaking pursuant to CPLR 5519 (a) (6) to require a more equitable result and citing to CPLR 2201];[FN12]
Russell v New York City Hous. Auth., 160 Misc 2d 237, 239 [Sup Ct, Bronx County 1992] [opining that even if the defendant were to be found subject to an automatic stay pursuant to CPLR 5519 (a), the court "would have construed the motion as one for a discretionary stay under CPLR 5519(c) and would have granted it in the court's discretion"]; Mully v Drayn, 37 AD2d 901, 901 [4th Dept 1971] [holding that because "all necessary parties were served with notice of the application, defendants were afforded a full opportunity to be heard and the matter was determined following a complete hearing . . . the application was actually and properly determined pursuant to CPLR 5519 (subd. [c]) [rather than CPLR 5519 (a) (6)]."]) Here, the parties are apprised well in advance that a hearing will be held and determined pursuant to CPLR 5519 (c).
CONCLUSION
Accordingly, it is
ORDERED that respondent's motion is granted to the extent that an undertaking and the fair value of prospective use and occupancy will be set after a hearing pursuant to CPLR 5519 (c).
The parties are to appear for a hearing in Part R, Room 602 of the Kings County Housing Court on Monday, February 24, 2025 at 9:30 a.m.
The court will issue a separate hearing order requiring the pre-marking of evidences and filing of subpoenas by a date certain.
This constitutes the Decision and Order of the Court.
Dated: January 14, 2025
Brooklyn, NY
HON. KAREN MAY BACDAYAN
Judge, Housing Part

Footnotes

Footnote 1:In the alternative, respondent argues pursuant to CPLR 2201 and RPAPL 753 (1) that execution of the warrant should be stayed due to respondent's advanced age, long-term residence in the subject premises (36 years), and because she has "conducted a tireless search submitting numerous apartment application." NYSCEF Doc No. 71, respondent's attorney's affirmation ¶¶ 40-41; NYSCEF Doc No. 73, respondent's exhibit A, apartment search.

Footnote 2:CPLR 2201 provides, "Except where otherwise prescribed by law, the court in which an action is pending may grant a stay of proceedings in a proper case, upon such terms as may be just." Courts have liberally applied CPLR 2201 in the context of summary proceedings.

Footnote 3:See Joseph F. Castiglione, Discretionary Stays on Appeal by Court Order: A Refresher, 84 NY St BJ 32, 34 (2012) ("The language in § 5519(c) does not include any specific criteria or hard-and-fast rule for issuing a discretionary stay by court order; rather, the operative word in applying the discretionary stay provisions under § 5519(c) is 'may.' New York courts have interpreted that language as meaning that 'granting of a stay pending appeal rests in the sound discretion of the court.' "

Footnote 4:CPLR 2505 states: "An undertaking together with any affidavit required by this article shall be filed with the clerk of the court in which the action is triable, or, upon an appeal, in the office where the judgment or order of the court of original instance is entered, and a copy shall be served upon the adverse party. The undertaking is effective when so served and filed."

Footnote 5:Compare Rubin v Rubin, 305 AD2d 198 (2d Dept 2003) holding otherwise ("denial of a discretionary stay does not bar a litigant from seeking an undertaking to effectuate the automatic stay." Id. at 198. See also Corcillo v Martut Inc, 43 NY2d 792 (1977) ("Motion for a stay denied without prejudice to appellant's statutory remedy for an automatic stay pursuant to CPLR 5519 (subd [a], par 6)." Id. at 792.

Footnote 6:See also In re Santiago-Monteverde, 24 NY3d 283, 290 (2014) (finding rent stabilization "provides assistance to a specific segment of the population that could not afford to live in New York City without a rent regulatory scheme. And the regulatory framework provides benefits to a targeted group of tenants—it protects them from rent increases, requires owners to offer lease renewals and the right to continued occupancy, imposes strict eviction procedures, and grants succession rights for qualified family members.")

Footnote 7:See n 4, supra.

Footnote 8:See New York City Comptroller Brad Lander, Spotlight: New York City's Housing Supply Challenge, https://comptroller.nyc.gov/reports/spotlight-new-york-citys-housing-supply-challenge/ (last accessed January 4, 2025). In this article, the City Comptroller reports that the "rental vacancy rate fell to a multi-decade low of 1.4%, down dramatically from 4.5% in (pandemic) 2021 and 3.63% in (pre-pandemic) 2017. The vacancy rate of apartments that rent below $1,650 was less than 1%" as of February 2024.

Footnote 9:New York City Rent Guidelines Board, Changes to the Rent Stabilized Housing Stock in NYC in 2023, https://rentguidelinesboard.cityofnewyork.us/wp-content/uploads/2024/05/2024-Changes-Report.pdf (last accessed January 4, 2025).

Footnote 10:The HSTPA enacted sweeping changes to the rent stabilization laws and eliminated all but a few paths to deregulation of a rent stabilized premises.

Footnote 11:"If I am evicted I will become homeless as I have no place to go. While my daughter lives in the City it is not safe for me to live there. My grandson attacked me last time I spent significant time at her apartment. He continues to live in the apartment. Without anywhere to go I would have to enter the shelter system. This would jeopardize my health as I am 68 years old and could contract COVID-19." NYSCEF Doc No. 72, Callendar affirmation ¶ 26.

Footnote 12:As discussed in Gur, supra, at 906, an application for an undertaking pursuant to CPLR 2201 is more properly viewed as an application pursuant to CPLR 5519 (c) in the context of an undertaking pending appeal.